COMMONWEALTH *vs.* SYLVANUS.S. DILL & another.

Barnstable.    March 28, 1892. — May 6, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Lewd and Lascivious Cohabitation — Evidence — Explanation of Cross-examination — Evidence too remote — Instructions.*

At the trial of an indictment for lewd and lascivious cohabitation, evidence tending to show cohabitation, the practice of fornication or adultery, and so much publicity and evil example as to lead to a visit from the overseers of the poor on the complaint of the judge of probate of the county, is sufficient to warrant a conviction.

At the trial of an indictment for lewd and lascivious cohabitation, a witness called by the government may testify that he was married to the female defendant, and to the place where they were married, without the production of the record of the marriage.

Where, at the trial of an indictment for lewd and lascivious cohabitation, a witness for the government testified, on cross-examination, that some years before he found his wife, the female defendant, sitting with a man and thought it improper

because of the man's reputation, it was *held* that the counsel for the government might ask what that reputation was.

Where, at the trial of an indictment for lewd and lascivious cohabitation, the husband of the female defendant appeared as a witness for the government, it was *held* that counsel for the defendants could not go into the sources of the trouble between the witness and his wife by asking him if he returned from a voyage a few years previously affected with syphilis.

Where, so far as appears, the jury have been instructed fully upon a matter in issue, a request for further instructions thereon is properly denied.

HOLMES, J.   The defendants were indicted for adultery, and also for lewd and lascivious cohabitation, and were found guilty of the latter offence.   Pub. Sts. c. 207, § 6.   The case is here on exceptions.   The first question is whether there was any evidence warranting a conviction of the defendant Dill.   There was evidence tending to show the following facts.   The defendant Higgins was engaged by Dill as his housekeeper, and had a son born after she had been with him in Wellfleet about a year. Dill continued to keep her, and she had another child, born at Boston, during a temporary absence, in a house taken by Dill's sister in law.   Dill came to the house, and was there when the child was born, and paid part of the expenses connected with the birth.   The child was given to the sister in law, and lived only a short time.   Whether the house was hired for permanent residence was disputed.   The alleged husband of the defendant Higgins testified, without objection, that he was not the father of these two children, and that he had not lived with his wife since a time before she went to Dill's.   An overseer of the poor of Wellfleet asked Dill if he would give a bond for the support of these two children, when the last was expected.   Dill answered that he would pay for all children born in his house, that he would not give any bonds, and did not know anything about a child going to be born under his roof.   He made no answer when another overseer suggested that the proper way to end the affair was for her to get a divorce, and for the two to get married, or when a witness said concerning the son, "That child looks like you."   On this evidence, we do not see what more the defendant could ask for than leave to persuade the jury, if he could, not to draw the natural inferences.   The evidence tended to show cohabitation, the practice of fornication or adultery, and so much publicity and evil example as to lead to a visit from the overseers of the poor on the complaint of the judge of probate for the county, who lived in Wellfleet.

The defendants, while relying upon the suggestion that the two children were begotten by the husband of the defendant Higgins, saved exceptions to his being allowed to testify that he was married to her, and where, on the ground that the record should be produced. It is true that the record by statute is presumptive evidence of the marriage, (Pub. Sts. c. 145, § 29,) but the record of a marriage is not like the record of a divorce, or other judgment or decree. It is a mere memorandum or declaration of the fact which effected the result, not itself the fact, nor that which has been constituted the only evidence of the fact. § 31. There is no reason why the oath of the person who did the act should be deemed inferior evidence to a written statement by him or another. *Commonwealth* v. *Norcross,* 9 Mass. 492. *Commonwealth* v. *Waterman,* 122 Mass. 43, 59. *Commonwealth* v. *Stevenson,* 142 Mass. 466, 468. *State* v. *Marvin,* 35 N. H. 22. The question whether, and how far, a husband can testify against his wife in a criminal proceeding since the St. of 1870, c. 393, § 1, Pub. Sts. c. 169, § 18, is not open.

When cross-examining the witness Higgins, the defendants brought out that some years ago he found his wife and one Cook sitting together, and that he thought it improper because of Cook's reputation. They excepted to the government being allowed to ask what that reputation was. But their own course opened the question, and they could not complain. The defendants then proposed to go further into the sources of trouble between the witness and his wife, by showing that he returned from a voyage affected with syphilis. The evidence was excluded, and properly. The merits of that controversy were remote from the present case.

At the end of the charge the court was asked to instruct the jury further as to the meaning of " cohabitation." The court refused, stating that the jury had been instructed fully upon the matter.* So far as appears, this was true.

*Exceptions overruled.*

*P. H. Hutchinson,* for the defendants.

*C. N. Harris,* Second Assistant Attorney General, for the Commonwealth.

---

* The bill of exceptions stated that the judge declined so to instruct the jury further, " stating that the jury had been fully instructed upon that matter "; but the bill did not disclose what the instructions already given were.