[L. A. No. 2142. Department One.—December 15, ·1908.]

# ALDEGUNDA C. DEL CAMPO et al., Appellants, v. ADOLFO CAMARILLO and JUAN E. CAMARILLO, Respondents.

ACTION TO RESCIND—DEED OF SETTLEMENT—PRIOR FRAUD IN DEED FROM ANCESTORS—FRAUDULENT PROBATE OF WILL—DISCOVERY—GROUNDS OF NONSUIT.—In an action begun in 1905, alleging prior fraud discovered in that year, without necessary explanation, to rescind a deed of settlement for twenty-five thousand dollars executed in 1898, after probate of a will, alleged to have been intended to be burned by the testatrix in 1896, by reason of a prior deed by her in 1891, alleged to have been intended and believed by her to convey a ranch to plaintiffs and defendants in equal parts, but alleged to have been fraudulently procured by defendants to be made to themselves only, who are also alleged to have substituted another document to be burned by her and to have retained the will for probate to their advantage. *Held,* that plaintiffs were properly nonsuited as to one defendant for failure of proof as to him, and as to both defendants for laches of the plaintiffs, and by conclusiveness of probate of the will.

ID.—EVIDENCE—CONSPIRACY—DECLARATION OF ONE DEFENDANT AFTER CONSUMMATION OF ACTS INADMISSIBLE AGAINST ANOTHER.—On the theory of the plaintiffs that defendants were co-conspirators in obtaining the deed to themselves, and in relation to the will kept back in 1891, the declaration of one of them not made while the alleged conspiracy was pending, but made long after the execution of the deed which made them tenants in common, and after the probate of the will in their favor, are admissible only against the party making them, and not against the co-defendant to show any fraud upon his part or to show the formation of the conspiracy.

ID.—LAND INCLUDED IN SETTLEMENT DISTRIBUTED UNDER WILL TO ONE DEFENDANT.—Where land included in the settlement deed sought to be canceled was distributed under the will to one defendant only, there can be no recovery on account of such land against the other defendant and he is entitled to a nonsuit as to such land.

ID.—JURISDICTION PRESUMED—INSUFFICIENT AVERMENT OF WANT OF JURISDICTION.—Where the complaint shows that the decedent resided in the county where the will was admitted to probate, and died therein, and that a decree of distribution was rendered therein, it must be presumed that the court had jurisdiction to make the decree; and the bare allegation that the court did not have jurisdiction of the proceeding, without any averments of facts showing the want of it, is of a mere conclusion of law contrary to the presumption, and wholly insufficient to overcome it.

ID.—ISSUE AS TO JURISDICTION—BURDEN OF PROOF NOT SUSTAINED.—Treating the general averment of want of jurisdiction as sufficient, when the answer took issue upon it, and denied any want of jurisdiction the burden rested upon the plaintiff to prove facts showing it, and where no such proof was shown, the jurisdiction must be sustained.

ID.—EVIDENCE PROPERLY EXCLUDED—PART OF RECORD OFFERED TO SHOW WANT OF JURISDICTION.—Where only part of the record was offered to show want of jurisdiction it was properly excluded on the ground that the whole record was not produced.

ID.—MONEY RECEIVED WITH FULL KNOWLEDGE OF FRAUD—ESTOPPEL.—Where money was received by a plaintiff on a settlement with one of the defendants with full knowledge of the alleged fraud, and was not restored to such defendant, such plaintiff is estopped from any further recovery against such defendant.

ID.—PLAINTIFF TAKING UNDER WILL ESTOPPED TO DISPUTE WILL.—A plaintiff who took property under the alleged invalid will is estopped to dispute its validity, while he retains such property.

ID.—LACHES NOT NEGATIVED IN COMPLAINT—DUTY OF INQUIRY—SETTLEMENT UNEXPLAINED—PROPER NONSUIT AND JUDGMENT.—Where the complaint shows the settlement deed for money paid, the alleged deception as to the will, and the fraudulent deed were increasingly remote transactions; the latter being fourteen years before suit, in relation to such remote events, the complaint must clearly negative all laches, and set forth a detailed statement of facts and circumstances showing that there was no means of discovery of the facts prior to the discovery alleged, and when the complaint is insufficient in that regard, and does not explain the reason for the alleged settlement nor show that the attorney employed to attack the alleged settlement nor that the attorney employed to attack the alleged will and the validity of the prior deed, did not know the existence of the frauds alleged, and where the evidence shows knowledge by plaintiffs of facts imposing upon them the duty of making inquiry as to the alleged frauds, prior to the settlement, the plaintiffs were properly nonsuited and judgment properly rendered in equity dismissing the case for laches.

ID.—EVIDENCE WITHHELD DEEMED ADVERSE—WILL AND DECREE ALLEGED AND NOT PROVED—PRESUMPTION AS TO DEVISE OF RANCH.—Evidence withheld is deemed to be adverse; and when plaintiffs' complaint alleged that defendants under the alleged will procured distribution to themselves of the greater part of their mother's estate, and they failed to produce the record of the will and decree, it must be presumed that while other property is shown to have been otherwise disposed of, that the will devised the ranch in controversy as being in fact the greater part of the mother's estate, to the defendants, and that they took the same under the will regardless of the validity of the prior deed of the same.

ID.—CONCLUSIVENESS OF ORDER ADMITTING WILL TO PROBATE—VACATION NOT PERMISSIBLE IN EQUITY FOR FRAUD OR PERJURY.—It is the established law of this state, as well as in other jurisdictions, that an order admitting a will to probate duly made in the course of probate jurisdiction in a proceeding for that purpose, cannot be vacated in equity for direct fraud in establishing it, consisting either of perjured testimony or a false will produced before the court at the time of the hearing and that the devisee therein cannot be declared a trustee of the heir in a suit in equity by the heir based on such fraud.

ID.—SOLE REMEDY FOR FRAUD—CONTEST OF WILL ONE YEAR AFTER PROBATE.—The sole remedy for such fraud is a contest of the will within one year after probate. This short limitation is made in order to prevent the unsettling of titles and the reopening of contests over estates of deceased persons.

ID.—TITLE UNDER PROBATED WILL.—Title under a duly probated will not contested operates to vest the property devised in the devisees, without reference to the final decree of distribution, and plaintiffs can have no interest in any property so devised, which would entitle them to maintain any action or proceeding in relation thereto.

ID.—DECREE AMENDABLE.—If the decree of distribution fails to dispose of the property legally devised by the will, the parties interested are entitled to have the decree amended in that regard.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Barnes & Selby, Knight & Heggerty, and B. T. Williams, for Appellants.

J. S. Chapman, Orestes Orr, Blackstock & Orr, Robert M. Clarke, and Henley C. Booth, for Respondents.

SHAW, J.—This is an action to rescind and cancel a deed from the plaintiffs and others to the defendants, purporting to convey to the defendants two tracts of land in Ventura County, and also all of the interest of the grantors in the estates of Juan Camarillo, deceased, Martina H. Camarillo, deceased, and Jose Camarillo, deceased, except certain property held by the plaintiff Wolfsohn under devise by the will of said Juan Camarillo, and to declare defendants trustees of plaintiffs as to a certain interest in the property. The

principal tract in controversy consisted of a ranch known as "Rancho Calleguas" containing over 10,000 acres. The complaint also seeks to have the defendants declared trustees for the plaintiffs as to the undivided fifteen twenty-eighths of the property described in the deed, and for an accounting of the rents and profits thereof. Upon the trial, after the plaintiff's evidence was introduced, the court granted separate motions of the defendants for a nonsuit. Thereafter plaintiffs moved for a new trial and the motion was denied. The plaintiffs appeal from the judgment of nonsuit and also from the order denying their motion for a new trial.

The ground of the action is the alleged fraud of the defendants in procuring the execution of the deed, and the subsequent fraud alleged to have been committed by the defendants in preventing the revocation of the will of Martina H. Camarillo, whereby the said will, which seems to have been favorable to the defendants, was preserved and was subsequently admitted to probate. It will be necessary to state briefly the facts alleged in the complaint. Juan Camarillo, who died in 1880, was the husband of Martina H. Camarillo, by whom he was the father of the defendants and of the plaintiffs Aldegunda C. Del Campo, Maria C. De Arnaz, Adelaide C. De Moraga, and Arcadia C. Mahoney, and the grandfather of the plaintiff William Wolfsohn, who was the son of his deceased daughter. By his will, and by descent as community property, five eighths of the property in controversy was given to his widow aforesaid and one eighth each to the two defendants, the other one eighth being given to his son Jose Camarillo, who died in 1884 unmarried and leaving his mother as his only heir. She thereby became invested with a three-fourths interest in the property. On May 14, 1891, the said Martina, desiring to convey her interest in the said rancho to the plaintiffs and defendants in equal shares, directed the defendants to have a deed of gift to that effect prepared so that she could execute the same. She was unable to read or write, except that she could write her name, and she had great confidence in the honesty and fidelity of the defendants. Intending to deceive and defraud the plaintiffs and their said mother, the defendants had a deed prepared purporting to be a conveyance by her to the said defendants alone of her said interest in the said rancho, as a gift from

her to them. This they induced her to execute by represent-
ing to her that it purported to convey the said rancho in equal
shares to all of her said expectant heirs, including plaintiffs
and defendants. By this means they caused the deed to be
executed, and under this deed they claim to hold the three-
fourths interest in the said rancho. This deed was not
recorded until January 19, 1897. On April 13, 1885, said
Martina executed her will, and on September 2, 1889, she
executed a codicil thereto. In December, 1896, she deter-
mined to destroy this will and codicil, and, with that intent,
she sent for the document. The defendant Adolfo, intending
to deceive her, intercepted the will on its way to her, and
represented to her that a certain other document which he
had in his possession was the will and by that false represen-
tation caused her to destroy the other document, believing it
to be the will, at the same time preserving the will in his own
possession, and thus preventing its destruction. This was
done with full knowledge of the co-defendant Juan. Martina,
the widow, died on April 15, 1898. Upon the petition of
defendants the said will and codicil were admitted to probate
by an order of the superior court of Ventura County, and
on April 22, 1899. a decree of distribution of her estate was
made by the said court. The contents of this will are nowhere
stated in the complaint, and neither the will itself nor the
decree, were introduced in evidence. The rancho was not
described in the decree of distribution. The complaint and
the evidence are alike devoid of express statement on the
question whether or not the decree contained any general
terms giving to the defendants the estate of the widow not
specifically described. Because of these frauds the plaintiffs
claim that the defendants hold as trustees for the plaintiffs
that portion of the land which would have descended to the
plaintiffs if the widow, Martina, had died intestate and pos-
sessed of the three-fourths interest in the said rancho. The
deed which they seek to cancel was executed on September
16, 1898, by the plaintiffs claiming as heirs of Martina H.
Camarillo and her deceased husband, Juan Camarillo, and
by Thomas B. Bishop, Charles S. Wheeler, L. M. Hoefler,
William Rix, and Guy C. Earl, as grantees from the said
plaintiffs of a one-third part of their interest, and quitclaims
all interest of the said grantors to the defendants in consider-

ation of the sum of twenty-five thousand dollars, which was therein declared to be in full settlement and satisfaction of all their claims and interests in and to the estates of Juan Camarillo, Martina H. Camarillo, and Jose Camarillo, deceased. There were other allegations made for the purpose of showing the ignorance of the plaintiffs of the frauds committed, and that they did not discover the same until shortly before the beginning of this action. The answers put in issue all the allegations of the complaint relating to the alleged frauds and the ignorance and discovery thereof by the plaintiffs. Each defendant answered separately.

There are several sufficient grounds upon which the ruling granting the nonsuit may be supported. The defendants each separately moved for a nonsuit, and although they both assign the same grounds, the motions were separate and independent. So far as the rancho is concerned, and it is by far the most valuable part of the property involved, it is immaterial whether or not there was any fraud in preserving and probating the will which was intended to be destroyed, provided the deed executed in 1891 was not shown to be invalid. With respect to Adolfo, there was no evidence of any substantial character tending to show that there was any deception or fraud in connection with the execution of that deed. The only evidence on the subject consisted of the testimony of certain witnesses to the effect that on March 28, 1905, the defendant Juan E. Camarillo confessed or declared to the plaintiff Mrs. Mahoney that in December, 1896, his mother Martina had sent a letter to Adolfo, asking him to bring her the said will, stating that she wanted to destroy it, so that all her sons and daughters, in case of her death, would share equally in her estate, as expressed in her deed, and that thereupon Adolfo perpetrated upon her the deception alleged in the complaint, by substituting another document for the will and causing her to burn such other document, supposing it to be the will; that at that time, in 1905, Juan gave the letter to Mrs. Mahoney and also stated to her that when the deed to Adolfo and himself was made, in 1891, one De La Guerra was called to interpret the deed to his mother, and that he translated it wrong, representing that it purported to convey the land to all her sons and daughters alike, instead of to her sons only, as the fact was. The theory of the plain-

tiffs is that this confession or declaration of the co-defendant Juan is evidence against Adolfo, as a declaration of a co-conspirator relating to the conspiracy. (Code Civ. Proc., sec. 1870, subd. 6.) Many authorities are cited by the respective counsel in regard to the rule concerning the admissibility and effect of such declarations. There is no serious disagreement on the subject. The rule is that such declarations of one conspirator, made while the conspiracy is pending and during the progress of the plan adopted for its accomplishment, are admissible against both. But, if made after the act designed is fully accomplished and after the object of the conspiracy has been either attained or finally defeated, the declaration will be admissible only against the person who made it. (*People* v. *Aleck,* 61 Cal. 139; *People* v. *Moore,* 45 Cal. 20.) Nor are such declarations admissible against a co-conspirator to prove the formation of the conspiracy. (Sec. 1870, subd. 6; *People* v. *Irwin,* 77 Cal. 502, [20 Pac. 56].) The plaintiffs contend that in the present case, at the time this declaration was made by Juan E. Camarillo in March, 1905, the object and purpose of the conspiracy had not been accomplished, and hence that the declaration was evidence against Adolfo. Their theory is that the purpose of the conspiracy was to obtain the interest of their mother in the property and to keep possession thereof as long as they lived, and that at any time during the life of the two conspirators, while they remained in possession and ownership of the property, the declaration of either as to the conspiracy would be admissible against the other. In our opinion this theory is absolutely untenable. The object of the conspiracy, if there was any, was to obtain from the mother her interest in the rancho. That object was fully accomplished when they secured the execution of a deed from her to them conveying to them her interest. The deed, being executed, immediately vested in them whatever interest the mother had. Nothing further remained to be done in furtherance of the conspiracy, or to effect the object for which it was formed. The fact that they thereafter remained tenants in common of the land thus obtained does not operate as a continuance of the scheme, nor make declarations of one of the tenants in common, made years after the execution of the deed, with respect to its execution, admissible as to the other.

The other parcel of real estate described in the deed of September 16, 1898, here sought to be canceled, was a house and lot in the town of San Buenaventura, which is described in the deed by metes and bounds and also as "The home place of said Martina H. de Camarillo." There is no direct allegation that this parcel ever belonged to Mrs. Camarillo, or that the plaintiffs ever had any legal or equitable estate or interest in it. It is alleged in that behalf that the superior court, on April 22, 1899, made its decree of distribution of the estate of Martina H. Camarillo, deceased, whereby there was distributed to the defendant Juan E. Camarillo the said house and lot above mentioned. This implies that Martina H. Camarillo died seized of this parcel, so that plaintiffs would have inherited interests in it as her heirs if she had died intestate. This fact was practically conceded throughout the trial. If the will is valid and binding, the decree of distribution would vest that parcel in the defendant Juan, and not in Adolfo. Consequently, in that event, there could be no recovery against Adolfo on account of this tract of land.

The plaintiffs apparently seek to avert any such consequence arising from this decree of distribution by the allegation that the court making the decree, the superior court of Ventura County, had no jurisdiction of the estate of Mrs. Camarillo, or of the proceeding for the probate of the will and for the administration and distribution of the estate. But it appears from the complaint that she was a resident of Ventura County at the time of her death, that the said will and codicil thereto and the petition for the probate thereof were filed in and presented to said court, and that a decree of distribution of her said estate was made as aforesaid. When the superior court makes a decree distributing an estate, if the fact of the making of the decree is properly made to appear, it will be presumed that the court had jurisdiction to make it. The presumption in this respect is the same as in the case of any other judgment of a court of general jurisdiction. (*In re Griffith,* 84 Cal. 109, [23 Pac. 528, 24 Pac. 381]; *Burris* v. *Kennedy,* 108 Cal. 338, [41 Pac. 458]; *Luco* v. *Commercial Bank,* 70 Cal. 342, [11 Pac. 650].) In an action in equity to impeach a judgment of a court of general jurisdiction on this ground, where the complaint alleges the giving of such judgment by the court it is necessary for the plaintiff to set

forth in his complaint the particular defects in the record which show a want of jurisdiction. The bare allegation that the court did not have jurisdiction of the proceeding is an averment of a conclusion of law, contrary to the presumption of jurisdiction which exists from the fact of the rendition of the judgment. (*In re Griffith,* [84 Cal. 109, 23 Pac. 528, 24 Pac. 381]; 23 Cyc. 1040; 11 Ency. of Plead. & Prac., 1187; *Herbert* v. *Herbert,* 47 N. J. Eq. 14, [20 Atl. 290]; *Masterson* v. *Ashcom,* 54 Tex. 324.) If the decree was void because of a want of jurisdiction appearing on the face of the record, the question of its validity would be a pure question of law to be determined from the record itself (*People* v. *Davis,* 143 Cal. 673, [77 Pac. 651]), and in order to show its invalidity it would be necessary for the pleader either to exhibit the record itself, or to state the particular facts and defects in the record which, in law, would make it void. If the lack of jurisdiction was because of facts outside the record, then those facts should have been averred. The complaint in this case does not aver any facts of either character and consequently the order admitting the will to probate and the decree of distribution must be assumed to have been made after the court had acquired jurisdiction by the necessary notice in that behalf.

Furthermore, even if it were conceded that a general averment of lack of jurisdiction would be sufficient in a pleading of this character, the answers denied the allegation, put the fact in issue, and placed upon the plaintiffs the burden of proving the absence of jurisdiction. This they utterly failed to do. No evidence was introduced tending to prove the allegation. They offered an affidavit of the county clerk showing the mailing of notice of the time appointed for proving the will to all the heirs of Mrs. Camarillo, except the plaintiff William Wolfsohn and the two defendants, neither of whom were mentioned therein, the defendants being the petitioners for its probate. At that time the plaintiffs' counsel had before them all the papers in the estate and stated that they did not propose to introduce the other parts of the record relating to jurisdiction. This affidavit was properly excluded by the court on the objection of the defendants that, for the purpose of showing lack of jurisdiction, the entire record on the subject should be exhibited, and that an offer of only a

part of it for that purpose was improper. No other evidence on the subject was offered and this affidavit cannot be considered even if it could be supposed to furnish evidence tending to prove a failure to obtain jurisdiction. The decree of distribution is therefore to be deemed valid, so far as this point is concerned. It shows that Adolfo has no interest in the home place distributed to Juan. It follows that no case was made against Adolfo with regard to either tract of land in controversy and as to him the nonsuit was properly granted.

With respect to the plaintiff Mrs. Mahoney, the evidence shows a complete estoppel, at least so far as the defendant Juan is concerned. The alleged confession of the defendant Juan was made to her. During that interview Juan gave her five thousand dollars in money and property amounting in value to three thousand five hundred dollars in consideration whereof she executed to him the following contract:

"For and in consideration of the sum of eighty-five hundred dollars to me in hand paid by Juan E. Camarillo, I hereby acknowledge satisfaction of all claims of every kind and character, I may have against him or his interests in the estates of my deceased father Juan Camarillo and my deceased mother Martina H. Camarillo, and my brother Jose Camarillo.

"Dated this 28th day of March, 1905.

"(Signed)    A. C. Mahoney."

According to her present contention, Juan at that time held title to an interest in the property in controversy, as trustee for her as heir at law of Mrs. Camarillo, and the right to enforce this trust was one of the claims she then held against him. The above instrument acknowledges the receipt from him of full satisfaction of all such claims. The confession was made to her before the contract was fully closed and before she had received all of the money which he then paid to her. If she did not have any previous knowledge of the frauds which she now asserts as the basis of her right to set aside the deed and the will, it must be admitted that this confession fully informed her thereof. Yet, with this knowledge, she closed the transaction and received and accepted the money and property given to her in satisfaction of the claims she now asserts. Instead

of then and there offering to rescind the contract, restoring what she had received and refusing to receive any further payment, she kept the said property and money and immediately thereafter paid one half of the money to an attorney as a retainer for the prosecution of a suit to enforce the claim which she had just relinquished. So long as she retains the property thus received she is clearly estopped to prosecute any suit to enforce the claim for which that property was received in satisfaction.

The plaintiff Wolfsohn is also estopped to assert the invalidity of the will. It appears that this will specifically devised to him a house and lot known as the "Old Camarillo Homestead." This fact was recited in the deed which is here attacked and it was therein expressly excepted from the operation of the general conveyance of all his interest in the estate of Mrs. Camarillo. He still retains that part of her estate and has never offered to restore it to the defendants or to relinquish it for the benefit of the heirs. He cannot be allowed thus to hold property under and by virtue of the will and at the same time deny its validity and seek to have it declared void.

The remaining points in support of the nonsuit apply equally in favor of both defendants. The deed of plaintiffs which is attacked was made nearly seven years before this action was begun. The alleged fraud in the execution of the deed from Mrs. Camarillo to the defendants occurred, if at all, in 1891, more than fourteen years before the beginning of the action. The alleged deception in regard to the attempt to burn the will was in December, 1896, almost nine years prior to the action. In seeking relief against the effects of frauds occurring so long ago, and in asking a court to cancel the contract and deed, which, in itself, implies a settlement of the wrongs inflicted by those frauds, the plaintiffs are required to allege a clear case and to prove it by satisfactory and convincing evidence. They must clearly show that they did not discover the existence or commission of the alleged frauds until within a reasonable time before the action was begun, that they proceeded promptly upon such discovery, and that their failure to make the discovery sooner was not due to their own lack of diligence. All this must be shown, not merely by a bare statement of the conclusions as we have

CLIV Cal.—42

stated them, but by a detailed statement of the facts and circumstances which caused the ignorance, which prevented an earlier discovery, and which constitute the diligence in seeking a discovery, including also a statement of all facts previously known to them tending to indicate the existence of the frauds. (*Truett* v. *Onderdonk*, 120 Cal. 588, [53 Pac. 26]; *Lady Washington* v. *Wood*, 113 Cal. 486, [45 Pac. 908]; *People* v. *San Joaquin etc. Assoc.*, 151 Cal. 807, [91 Pac. 740].)

The evidence shows that shortly before the mother's death she told several of the plaintiffs that her property would go to all her children in equal shares and that all the plaintiffs were soon afterwards informed of this statement. The deed of 1891, from her to the defendants, was duly recorded on January 19, 1897. A lease from the defendants to the Union Oil Company, purporting to cover the entire interest in the oil underlying 3707 acres of the ranch was recorded in June, 1896. Maria Tico, whose testimony was the only evidence of the episode of December, 1896, the attempt to burn the will and the prevention thereof by Adolfo, also testified that within three weeks after the mother's death, she related the occurrence to the plaintiff Mrs. Del Campo. The mother had for many years a small tin box in which she was known to keep her valuable papers. This box was at her bedside at the time she died and the defendants and several of the plaintiffs were then present. The plaintiff William Wolfsohn testified that within five minutes after her death he saw Adolfo with this box in another room upstairs, and saw him take a paper from his pocket, place it in the box and then shut the box, and that he then knew it was his grandmother's private box. The plaintiffs Mrs. Arnaz and Mrs. Del Campo each testified to the fact of seeing Adolfo take the box from his mother's room a few minutes after her death. This occurred on April 15, 1898. On June 6, 1898, the plaintiffs executed to the law firm of Bishop & Wheeler in San Francisco a deed and agreement whereby they conveyed and transferred to said firm the undivided one third of all their rights, interests, and estates in and to the said ranch, and in and to the estates of Martina H. Camarillo and Jose Camarillo, in consideration whereof said firm agreed to institute, maintain, and prosecute all such suits and actions as should be necessary to establish the invalidity of said will and codicil of Mrs.

Camarillo and of her deed of gift to the defendants convey-
ing to them her interest in said rancho, and said firm were
thereby empowered, with the consent of plaintiffs, to com-
promise and settle such suits and receive for their compen-
sation one third of the proceeds, the plaintiffs agreeing not to
settle or compromise without the consent of said firm. Both
the complaint and the evidence are silent as to grounds
upon which it was then proposed to invalidate the said will
and deed and also as to the proceedings and inquiries made
by the plaintiffs and the said firm with respect thereto. A
compromise was effected, however, and in pursuance thereof
the defendants paid to the plaintiffs and to said firm the sum
of twenty-five thousand dollars, and the plaintiffs and said
firm conveyed to the defendants by quitclaim all their rights,
titles, and interests in and to the property here in contro-
versy. It is this deed, made on September 16, 1898, which
the plaintiffs now seek to have canceled. This contract with
Bishop & Wheeler expressly recites that said gift deed had
been executed and that the petition for the probate of said
will had been filed, that the plaintiffs challenged the validity
of said deed and of said will, and that the defendants asserted
the validity thereof and claimed the said ranch and other
property of the mother under the said deed and will. After
Bishop & Wheeler obtained the conveyance from the plain-
tiffs of one third of the plaintiffs' interests, on June 6, 1898,
and until the execution of the compromise deed of September
16, 1898, the said firm was interested as part owners, in com-
mon with the plaintiffs, in making inquiries for evidence to
avoid the deed and will. Not only so, but the said firm was by
said agreement specially employed to make such inquiries and
it was the duty of its members to exercise diligence in the
search. It is evident that a contest of the will and a suit to
avoid the deed were then contemplated, if not actually insti-
tuted, and that the deed of 1898 was made in settlement of
those claims and to avoid the expected or pending litigation.
The complaint herein does not explain the reason of this com-
promise nor aver that said firm of attorneys, who were then in-
terested parties, were ignorant of the frauds now alleged and of
the evidence now produced or other evidence sufficient to prove
them, nor does it show that said attorneys used diligence in
prosecuting inquiries and searching for evidence, nor that they

were not negligent in that respect. And there is no evidence on these points. Both before and since the mother's death the plaintiffs and defendants have frequently met in friendly relations. It does not appear that either of the plaintiffs, or any one of said firm of attorneys, has ever asked the defendants to explain the alleged statements of the mother to plaintiffs that all her property was to go equally to all the heirs. Due diligence required that such inquiry should have been made, and also that they should inquire of each other. Notwithstanding anything in the complaint and proof, Bishop & Wheeler, during their employment, may have had knowledge of the frauds now alleged and of evidence in support thereof. The compromise, then made, with at least some knowledge of the frauds now alleged, the delay of seven years in suing to avoid it, the lapse of time after the execution of the deed of gift, and before the donor's death, and all the other circumstances above detailed, with no better or more complete excuse than is here given, are sufficient to justify a court of equity in dismissing the action on the ground of laches.

It is rather remarkable that, while the plaintiffs apparently object to the provisions of this will, manifestly considering it injurious to them and advantageous to defendants, and allege its fraudulent preservation as one of the wrongs upon which their present action is based, they do not set out its contents in the complaint and did not introduce it in evidence, although it was before them at the time of the trial. While there is thus an absence of direct allegation and evidence on the subject, the whole case, as exhibited in the complaint and as shown by the evidence, necessarily implies that this will purported to devise the ranch to the defendants. If it did not do so the whole charge of fraud in its preservation would be immaterial in so far as Adolfo was concerned. The fact that its contents were not shown raises an inference that it did devise the ranch to the defendants. Evidence withheld is presumed to be adverse. (*Bagley* v. *McMickle,* 9 Cal. 446.) The allegations imply this fact also. It is alleged that by virtue of the will, Adolfo procured a distribution of *"the greater part"* of his mother's estate to himself and Juan. No other property could answer this description. The inventory, which was introduced in evidence, shows that her entire estate was of the value of six thousand seven hundred and fifty dollars,

of which seven hundred and fifty dollars was personal property, five thousand dollars was the home place devised by the will to Juan and distributed to him by the decree, and one thousand dollars was "The Old Camarillo Homestead," devised and distributed to William Wolfsohn. If she then also owned the ranch, as the plaintiffs contend, it constituted the greater part of her estate and it would be this ranch which Adolfo by procuring the probate of the will contrived to have distributed to himself and Juan. It does not appear that Adolfo got any part of the property described in the inventory except one half of the personal property if any remained after paying debts and expenses, and yet, according to the complaint, he and Juan obtained by the decree of distribution "substantially all of her estate." The decree does not expressly mention the ranch. The only rational explanation, from the standpoint which plaintiffs have chosen to occupy, is that the will, after some specific provisions in favor of Juan and William Wolfsohn, gave the residue of the estate to Juan and Adolfo, and that the decree of distribution, by a general clause, gave them all of her estate not therein specifically mentioned. This latter clause would include the ranch, if the deed of gift to the defendant were void, as the plaintiffs claim. In addition to all these circumstances there is the direct testimony of Adolfo, while a witness for the plaintiff, that his mother told him that the will gave the ranch to him and Juan, and that afterwards he saw the will and was present at the execution of the codicil substituting him and Juan as executors thereof. From all these circumstances the trial court may rightfully have concluded that the will devised the ranch to the defendants. There is no evidence to the contrary.

The fact that the will purports to give the ranch to the defendants has an important bearing on the motion for a nonsuit. The will was duly probated. If this probate was valid and effectual, it operated to establish the will according to its tenor, and thus it gave the ranch to the two defendants, regardless of the validity of the deed from their mother. If this were the case, the mere fact, if it be a fact, that the decree of distribution did not carry out this disposition of the will, would be of no benefit to plaintiffs. If they cannot be allowed to set aside the probate of the will, nor change its

effect, it would avail them nothing to have the distribution vacated. In that event the only thing that could be done would be to have a new decree of distribution made expressly distributing the ranch to the defendants in accordance with the provisions of the will. It is the established law of this state, as well as of many other jurisdictions, that an order admitting a will to probate, duly made by the court of probate jurisdiction, in a proceeding for that purpose, cannot be vacated by a court of equity for direct fraud in establishing it, consisting either of perjured testimony or a false will, produced before the court at the time of the hearing, and further, that the devisee therein cannot be declared a trustee in favor of the heir in a suit in equity by the heir based on such fraud. The fraud here complained of consisted of producing this will to the court, introducing evidence establishing its due execution and in avoiding a disclosure of the alleged attempted revocation and fraudulent preservation thereof. All these were facts relating to the validity of the will, which was the very fact to be then determined by the court. This character of fraud comes within the same class as perjured testimony or the fraudulent production and proof of a false will previously forged. The only remedy for a fraud so committed is the remedy afforded by the probate statute, that is to say, a proceeding to contest the will and to revoke the probate thereof, which under section 1327 of the Code of Civil Procedure may be begun within a year after such probate. This short limitation is made in order to prevent the unsettling of titles and the reopening of contests over estates of deceased persons. These propositions are firmly established by the following decisions: *State* v. *McGlynn,* 20 Cal. 234, 271, [81 Am. Dec. 118]; *Kieley* v. *McGlynn,* 88 U. S. 503; *Langdon* v. *Blackburn,* 109 Cal. 19, [41 Pac. 814]; *Bacon* v. *Bacon,* 150 Cal. 483, [89 Pac. 317]; *Tracey* v. *Muir,* 151 Cal. 363, [12 Am. St. Rep. 117, 90 Pac. 832]; *Estate of Davis,* 151 Cal. 327, [121 Am. St. Rep. 105, 86 Pac. 183, 90 Pac. 711]. It follows, therefore, that the provisions of the will, as established by the probate thereof, would, in any event, operate to vest the ranch in the defendants. If the decree of distribution failed to dispose of it at all, the defendants could have the decree amended in that respect. And as the probated will would be conclusive as to the dis-

position of the ranch made by the testator, the plaintiffs would have no interest therein which would entitle them to maintain any action or proceeding in relation to it. This is also true of the home place devised to Juan Camarillo by the will and distributed to him by the decree.

For all of these reasons we think the nonsuit was properly granted.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.