[L. A. No. 6246. In Bank.—January 5, 1922.]

FLORENCE M. BUDD, Respondent, v. IDA ALYS MORGAN, Appellant.

[1] ALIENATION OF AFFECTIONS—MARRIAGE—EVIDENCE.—In an action by a wife for the alienation of the affections of her husband, a *prima facie* case of the existence of the marriage relationship is sufficiently made out by the testimony of the wife as to the marriage and that they had subsequent thereto deported themselves as husband and wife.

[2] MARRIAGE—EVIDENCE—CONSTRUCTION OF CODE.—The intent of section 57 of the Civil Code, providing that consent to marriage and a solemnization thereof may be proved under the same general rules of evidence as facts proved in other cases, was to enable parties to or persons present at the solemnization of a marriage to testify to the facts within their knowledge that such marriage actually took place, and when to such testimony the additional evidence is educed showing that since the marriage the parties have deported themselves as husband and wife, a *prima facie* case has been sufficiently shown.

[3] ALIENATION OF AFFECTIONS — CONSPIRACY — EVIDENCE — DECLARATIONS.—Where in an action by a wife for the alienation of the affections of her husband the defendant claimed that she was the victim of a conspiracy which had been formed for the purpose of entrapping her into a compromising position with plaintiff's husband, it was reversible error to exclude evidence of declarations made before the consummation of the conspiracy by a deputy constable, employed by plaintiff's attorney to serve process on the defendant, relative to other things he did and was to do, where the evidence established *prima facie* that he in reality was a member of the alleged conspiracy, rather than an employee thereof, although he was not named as a conspirator in the answer.

APPEAL from a judgment of the Superior Court of Los Angeles County. Willis I. Morrison, Judge. Reversed.

The facts are stated in the opinion of the court.

H. C. Millsap and Ward Chapman for Appellant.

Swaffield & Swaffield for Respondent.

SHURTLEFF, J.—This is an action by plaintiff for damages for the alleged alienation by defendant of the affec-

tions of one Orris O. Budd, the plaintiff's husband. The amended and supplemental complaint alleged that the plaintiff and said Orris O. Budd were, and ever since the fourth day of March, 1901, had been, husband and wife, and stated in detail the acts and conduct of the defendant alleged to have caused and resulted in such alienation. The defendant in her answer denied, for want of knowledge, information, or belief, that plaintiff was lawfully or otherwise married to said Budd, or that they are or at any of the times mentioned in the complaint were husband and wife, and also denied both the alienation of the husband's affections and the alleged means and acts by and through which it was claimed that the same had been accomplished. The answer further averred that the defendant was the victim of a conspiracy entered into by the plaintiff, her husband, the said Orris O. Budd, and certain other named persons, by and in pursuance of which the said Budd was to make love to defendant and was to entrap her into compromising positions with him in order to lay the foundation for and further this action, and to extort money from the defendant.

The action was tried upon the issues thus framed before the court and a jury, and resulted in a verdict for fifteen thousand dollars damages in favor of plaintiff, for which amount judgment was entered, and from which judgment this appeal is prosecuted.

The appellant does not contend that the evidence upon the issue of alienation was insufficient to support the verdict, but confines her claim for reversal to the following: First, that the marriage between plaintiff and the said Orris O. Budd was not sufficiently established; second, error in the exclusion of certain evidence; and, third, misconduct by the court in the use of certain language when ruling upon one of defendant's objections.

[1] The first of these contentions was, we think, correctly determined by the district court of appeal in the following language, which we approve and adopt: "The first . . . contention of the appellant is that the evidence which was offered by the plaintiff for the purpose of establishing the marriage between herself and Orris O. Budd was insufficient to establish such marriage, and that the objections of the defendant to the admission of the same should have been sustained. The evidence which was thus offered and objected to

was, first, that of the plaintiff herself, who, after testifying to her age and place of residence, was interrogated as follows: 'Q. Whereabouts were you married? A. Kokomo, Indiana. Q. To whom were you married? A. Orris O. Budd.' . . . The defendant hereupon interposed an objection to this evidence as incompetent, irrelevant, and immaterial, as calling for the conclusion of the witness, and not the best evidence. The objection was overruled, whereupon the witness proceeded to testify that she had the certificate of marriage with her. . . . The plaintiff was then asked by whom she was married—a minister or an official, and an objection to this question having been offered and overruled, she answered that she was married by the Rev. Mr. Floyd, a minister of the Christian church in Kokomo. She was then asked whether a license had been issued to herself and husband prior to said marriage, which question she answered in the affirmative. She then proceeded to testify that from the time of this marriage in 1901, herself and husband had lived together as husband and wife in various places, and that a strong and mutual affection had existed between them up to about the year 1913, when the affections of her husband began to cool until a few months later when they reached a point of estrangement without any fault on her part, but in spite of her efforts to retain her husband's affections. He finally left her, suggesting that she had better get a divorce. The plaintiff then proceeded to testify to the relations which she began to discover as existing between her husband and the defendant, and finally to the episode of surprising her husband at the mine, where he was employed, in a compromising position with the defendant. We are of the opinion that the evidence thus presented by the plaintiff in relation to her marriage to Orris O. Budd, and to the fact that for several years prior to the misconduct of the defendant resulting in the alienation of his affections the plaintiff and Orris O. Budd had been deporting themselves as husband and wife, was properly admitted by the trial court, and was sufficient to establish *prima facie* the fact that the plaintiff and Orris O. Budd were husband and wife. Conceding that the laws of Indiana with relation to the solemnization of marriages will be presumed to be the same as those of California upon that subject, it does not follow therefrom that in making proof of the existence of

the marriage relation it would be necessary to establish the successive statutory steps to be taken prior to and including the solemnization of such marriage specified in sections 68 to 74, inclusive, of our Civil Code. Section 57 of the Civil Code provides as follows: " 'Sec. 57. Consent to marriage and solemnization thereof may be proved under the same general rules of evidence as facts are proved in other cases.'

[2] "We are of the opinion that the intent of this section of the Civil Code was to enable parties to or persons present at the solemnization of a marriage to testify to the fact within their knowledge that such marriage actually took place; and when to such testimony the additional evidence is educed showing that since said marriage the parties thereto have deported themselves as husband and wife, a *prima facie* case has been sufficiently shown. Subdivision 30 of section 1963 of the Code of Civil Procedure, dealing with disputable presumptions, specifies as one of these the presumption 'that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage.' That it was the intent of our lawmakers to render such proof sufficient to make out *prima facie* the status of husband and wife would seem to be also deducible from the fact that even in criminal cases no higher form of proof is required in this state. Section 1106 of the Penal Code provides that 'upon a trial for bigamy it is not necessary to prove either of the marriages by the register, certificate or other record evidence thereof, but the same may be proved by such evidence as is admissible to prove a marriage in other cases.' That the rules of evidence above stated are applicable to proof of the existence of the marriage relation in other states, see *Barber* v. *People*, 203 Ill. 543, [68 N. E. 93]; *Franklin* v. *Lee*, 30 Ind. App. 31, [62 N. E. 78]; *Mathews* v. *Silvander*, 14 S. D. 505, [85 N. W. 998]; *Jacobsen* v. *Siddal*, 12 Or. 280, [53 Am. Rep. 360, 7 Pac. 108]; *Commonwealth* v. *Bill*, 156 Mass. 226, [30 N. E. 1016]; *Murchison* v. *Green*, 128 Ga. 339, [11 L. R. A. (N. S.) 702, 57 S. E. 709]; *Commonwealth* v. *Hayden*, 163 Mass. 453, [47 Am. St. Rep. 468, 28 L. R. A. 318, 40 N. E. 846].

"We are, therefore, of the opinion that the plaintiff, by the form of evidence which she presented to the trial court, sufficiently made out a *prima facie* case of the existence of the relation between herself and Orris O. Budd of husband

and wife, that the objections of the defendant to such evidence were properly overruled, and that her present contention that the same was insufficient to prove the fact in issue cannot be sustained.''

[3] Appellant's second contention is that the trial court erred in excluding certain statements and declarations made by one R. E. Fisher, claimed by appellant to have been a member of the conspiracy which she affirmed had been formed for the purpose, through a trick, of getting her in a false and apparently improper position with Budd. An understanding of this point requires a somewhat extended reference to the proceedings which occurred in reference thereto at the trial. John F. McClure, a witness on behalf of appellant, was asked this question: "Did you at any time during that year [1913] have a conversation with R. E. Fisher and Mr. Macy in the city of Los Angeles relative to any controversy or proceedings had or taken by Mr. Fisher in any case?" An objection to the question was overruled and the witness answered: "I heard a conversation." He was then asked: "State when and where and the parties present at the time of the conversation," which question was objected to as incompetent, irrelevant, and immaterial, calling for hearsay testimony. The court thereupon asked: "This is the same conversation taken up before as to acts of various conspirators and matters relating thereto, that is the purpose of the offer?" To which appellant's attorney replied in the affirmative. A colloquy then followed between court and respective counsel, in which the court inquired if it was claimed that Fisher was a conspirator, and respondent's counsel replied that it was not so claimed in the answer, the averments of which did not in terms name Fisher as a conspirator as it did the plaintiff, Budd, and several others, but averred that respondent's attorney had employed Fisher "special deputy constable of the city of Long Beach" to serve a copy of the complaint and summons in this action upon defendant, and instructed and directed him to go to the Perris mine, where the defendant was living and Budd was working, and serve said copy of summons and complaint in the manner set forth in the answer; thereupon the court said: "The court . . . is going to hold that any act or declaration of Mr. Fisher relative to matters arising out of, and within the scope of his employment, are

admissible in evidence. . . . I am only holding that they
can prove what they aver in the answer, . . . that they can
prove, the employment of Fisher being admitted, that they
can prove the allegations of the answer concerning that em-
ployment.'' Thereupon counsel for defendant made a com-
prehensive statement of what he offered to prove by the
witness, which included that the declarations of Fisher,
which he desired to put in evidence, were made on March
10, 1913 (the day following the discovery of defendant and
Budd in a compromising position in defendant's room at
the Perris mine); that the return of the summons had not
then been made; that Fisher had not then been paid his
compensation; that in pursuance of his employment Fisher
had telegraphed plaintiff's attorney, who employed him, to
meet him either at Long Beach or at Los Angeles on the
morning of March 10th; that on that morning, and before
Fisher had reached the office of plaintiff's attorney, Fisher,
in the presence of one Macy and the witness, stated he had
been to the Perris mine and had gone there under the in-
structions and directions of plaintiff's attorney ''for the
purpose of executing a frame-up, and that it had been
agreed between Mrs. Budd, Whealton (plaintiff's attorney),
Burroughs (plaintiff's brother), and other parties at the
mine, that Budd should enter the room of Mrs. Morgan at
a time and place to be agreed upon, and that the whole deal
was carried out as planned; that it took him to frame up
and pull off a deal like that; that the house of Mrs. Morgan
was entered on the night of March 9th and that he held a
gun on Mrs. Morgan and compelled her to submit to the
taking of a flashlight picture; that a demand was made for
a settlement or a payment of money, and that Mrs. Morgan
did then and there agree to pay, and that he, Fisher, would
get his, to wit, three thousand dollars.'' Plaintiff objected
to the introduction of this testimony on the ''ground that it
was incompetent, irrelevant, and immaterial; calling for
hearsay testimony, especially that portion . . . as to what
the conspiracy was, and that it is prejudicial,'' calling for
the recital of transactions by an officer, made after he had
made the service for which he was employed, and that any
statement or remarks made by him after he had performed
his services as an officer could in no way bind any of the
parties to the action. The court, in ruling upon this objec-

tion, said: "The court will hold no declarations, except those made during the pendency of the conspiracy and in furtherance of its objects, are admissible as against the co-conspirators," which would mean that the statements made by Fisher, after returning to Los Angeles, relative to the things he went to the mine to do, were not admissible, "in so far as all proof is concerned at the present time the court does not see there is sufficient before it to justify it in holding that the employment was in effect after March 9th or 10th, whatever it may be." The result was that the proffered evidence was rejected, which ruling we think was error, and that defendant should have been permitted to introduce the declarations. At the time they were made the objects of the conspiracy had not been fully accomplished, nor was Fisher's active participation in it at an end; he had not at that time made his final report to plaintiff's attorney, neither had he received the three thousand dollars which he stated was to be paid him out of the money which might be forced from the defendant by threats to send a copy of the flashlight picture showing defendant in bed with Budd, taken by those acting with and for plaintiff at the mine, on the night of March 9, 1913, to each of the heirs of defendant's deceased husband, all of which was fully known to Fisher, he being one of the party that took the photograph and having taken an active part not only in what transpired that night, but in planning and carrying out the invasion of defendant's room. It is apparent that the trial court correctly regarded Fisher as a member of the alleged conspiracy. Conceding that he may have been employed to serve the summons and complaint upon the defendant, the record shows that his connection with the matter went beyond that of a officer engaged for the sole purpose of serving legal papers. The evidence established *prima facie* that in reality he was a member of the alleged conspiracy, rather than an employee thereof. It was not necessary for Fisher, in order to make the aforementioned service, to spend two days and nights in the vicinity of defendant's mine before making such service, and to make it at night-time, under the circumstances which he did, when it clearly appears that it could have been made at a much earlier date in the daytime and in the usual way. It was not necessary that he should become a member of a party organized for the express pur-

pose of forcibly entering the defendant's room in the night-time upon receipt of a signal that Budd had entered it, such entrance not to be made without such signal. It was not necessary that, upon accomplishing such entrance by force, he should read the complaint to the defendant. It was not necessary that he should, on the night of March 8, 1913, accompany plaintiff and others of the alleged conspiracy to a barn upon defendant's said mine and near the room occupied by defendant, stay there about an hour, and finally return to the Death Valley mine, where the party, including Fisher, were staying, without making the service, because they were advised that nothing would be going on that night. It was not necessary that, when making the service of the papers in this action, he should read the names of the heirs of defendant's deceased husband to the defendant in her room on the night of March 9th. Add to the foregoing the statement of the plaintiff, that she knew Fisher carried a pistol, and of the defendant, made under oath, that on the night of March 9th, while the plaintiff and others were in her room, that someone (probably Fisher) pointed a revolver at her (defendant's) head, and the further testimony of the defendant, that she was innocent of each and every act of misconduct charged against her; that there had been no improper relations between her and Budd; we think there was, as we have said, sufficient *prima facie* proof that Fisher was a co-conspirator, to admit in evidence his alleged declarations, made during the existence, and before the consummation, of the conspiracy. As said in *Del Campo* v. *Camarillo*, 154 Cal. 647, 653, [98 Pac. 1049, 1052]: "The rule is that . . . declarations of one conspirator, made while the conspiracy is pending and during the progress of the plan adopted for its accomplishment, are admissible against both." While the plaintiff testified that the purpose of the incident of March 9th was to secure evidence in support of her alienation suit, the facts showed, *prima facie* at least, that its main and real object was to force defendant, through fear of disgraceful exposure, to pay plaintiff a large amount of money to keep the matter quiet and suppress the photograph so frequently referred to herein, which object (the collection of money) had not been accomplished at the time the alleged declarations of Fisher were made. Of course, the formation of the conspiracy itself could not have

been proved as against his alleged co-conspirators by the declarations of Fisher (*Barkly* v. *Copeland*, 86 Cal. 483, [25 Pac. 1, 405]; *Del Campo* v. *Camarillo, supra*), but such was not the purpose of the offer; it was to show what Fisher, as one of the conspirators, had done and said after its formation and before its consummation in furtherance thereof, and in connection therewith. Nor was it necessary for Fisher to have been one of the original conspirators in order to become a member thereof. If he knew of its existence, as he unquestionably did, he became a party thereto as completely as he would had he been one of its original organizers. (*People* v. *Kizer*, 22 Cal. App. 10, [133 Pac. 516, 521, 134 Pac. 346]; *United States* v. *Cassidy*, 67 Fed. 698.)

We discover no ground for reversal in appellant's final claim that the following remarks, made by the trial court when ruling upon one of defendant's objections, amounted to misconduct. The court said: "I think in so far as the alienation is concerned, there is no question but what the wife lost the affections of her husband at the time at least when he said he was leaving, never to return. . . . If she did not possess his affections at that time, why, certainly they could not thereafter be alienated"; thereupon the appellant's counsel asked the court to instruct the jury that the "court does not mean to say as a matter of fact it has been established, as your Honor's words would indicate, that beyond doubt the alienation has been proved," to which the court replied, "The court is not intending in any way to pass upon the facts; merely had reference to the statement made by the plaintiff that at a certain time her husband left her and stated he was never coming back." While these last quoted remarks were not cast in the form of an instruction, they were in effect the equivalent thereof, and substantially told the jury that the court was not passing upon the facts, and that that was their function.

For the reasons already stated the judgment is reversed.

Wilbur, J., Lennon, J., Sloane, J., Shaw, C. J., and Waste, J., concurred.