UNITED STATES, Appellee

v.

HUGH T. CLIETTE, First Lieutenant, U. S. Army, Appellant
2 USCMA 240, 8 CMR 40

No. 1129

Decided February 27, 1953

LT. COL. George M. Thorpe, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Eugene L. Grimm, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The appellant in this case, First Lieutenant Hugh T. Cliette, arrived at Burtonwood Air Force Base, England, Friday evening, November 9, 1951, as a member of an advance detachment of his organization. The written orders under which he was traveling specified as his destination no more than "the United Kingdom," and further recited that he was a member of an advance detachment of his company, which was to move "from Fort Bragg, North Carolina, to Camp Kilmer, New Jersey, and thence to Southampton, England." Before leaving Fort Bragg, he had received an unofficial indication that his unit would ultimately be attached to the 32d Anti-Aircraft Brigade in England. On Saturday, November 10, the morning after his arrival at Burtonwood, he presented himself to the Air Force officer in charge of processing incoming officers there. That officer was without information concerning appellant's station assignment, but, on the basis of a suggestion from the latter, he called the 32d Anti-Aircraft Brigade headquarters at Mildenhall, England,

by telephone, and spoke with a Major Ruck, who was Adjutant of that organization. Major Ruck stated that appellant should report to the 32d Brigade at Mildenhall. The Air Force officer at Burtonwood relayed this information to appellant. On the witness stand, the latter specifically stated that he regarded the direction of Major Ruck to report to the 32d Brigade as a competent direction. After the Burtonwood-Mildenhall telephone conversation, the Air Force officer invited appellant's attention to railroad time schedules, and, in response to a query, informed Cliette that it was possible to reach Mildenhall by way of London. No reference was made at any time by anyone to an authorized delay in reporting to the 32d Brigade.

After this interview, appellant returned to the Transient Officers Quarters at Burtonwood, where he was registered. There he learned from a billeting sergeant that a shuttle airplane service operated between Burtonwood and Mildenhall, but that there would be no flight until the following Tuesday, November 13, because of the Armistice

**241**

Day recess, which was to include Monday, November 12, as well as the normal weekend period. The sergeant additionally stated that all personnel at Burtonwood were "off" on weekends. Accused thereupon journeyed to London for the weekend.

He returned to Burtonwood Tuesday, November 13, where he discovered that a Lieutenant Elkins, also a member of the advance party of his unit, had registered at the Transient Officers Quarters. However, inquiry of a civilian clerk disclosed that Elkins had departed for Southampton. Appellant thereupon returned to London, and from London went to Southhampton, arriving in the latter city Wednesday evening, November 14. He was unable to locate Elkins, but learned from casual inquiry of an unidentified enlisted man on a dock there that advance parties did not remain at Southampton normally. Having acquired this dubious information, appellant returned to London a third time, arriving early Thursday morning, November 15. On this occasion he came into touch with Lieutenant Elkins, who, in the meantime, had likewise received information that he should report to the headquarters of the 32d Brigade at Mildenhall. The two officers eventually reached Mildenhall on Saturday, November 17. Appellant testified subsequently that he was detained in London all of Thursday and Friday seeking to regain possession of his luggage from a hotel checkroom, the key to which was in the custody of a person who could not be located.

On the basis of these facts, together with others which will be set out shortly, appellant was convicted by general court-martial: (1) of absence without leave from his station at Mildenhall for the period "on or about" November 10, 1951, until "on or about" November 17, 1951, in violation of Article 86 of the Uniform Code of Military Justice, 50 U. S. C. § 680; (2) of filing a false arrival report with intent to deceive, in violation of Article 107 of the Code, 50 U. S. C. .§ 701; and (3) of filing a false per diem and expense schedule for reimbursement, also a violation of Article 107, supra. The trial court sentenced him to dismissal and to a fine

**242**

of $300.00. After approval by the convening authority, a board of review affirmed the findings and the sentence to dismissal, but disapproved the fine. This Court granted appellant's petition for review, limited, however, to the question of whether the evidence is sufficient to sustain the findings of guilt.

II

We shall direct our attention, first, to the specification alleging absence without leave from "on or ■■■■■■ ■ about" November 10, 1951, to "on or about" November 17, 1951. Appellant argues that the Adjutant of the 32d Brigade had no authority to order him to report to that organization, for the reason that his company had not been officially attached to the Brigade when the order to report was given. This issue, however, was expressly raised and considered at the trial. The evident conclusion of the triers of fact that accused's unit had been attached to the Brigade at the time is supported by unequivocal testimony to that effect. Therefore, we cannot say that the record is insufficient in this particular. We must also recall attention to the testimony of appellant himself to the effect that he *regarded* the order at the time as a lawful and competent instruction. Next, it is argued that appellant had been directed to go to Southampton by his commanding officer prior to his departure from Fort Bragg. This too is not borne out by the record. True, there was testimony by appellant's commanding officer that it had been "expected" that the former would go to Southampton, but that hardly could have constituted an "order." And—we may observe—whatever the justifiable "expectations" when appellant left the United States, they were clearly supplanted by the subsequent unequivocal and legal order to report to Mildenhall. This latter order likewise dispelled whatever scent of ambiguity there may have been in the written orders which took appellant to England. We emerge with a total evidentiary picture quite sufficient to sustain the conviction of absence without leave. The tenor of appellant's testimony to the effect that he

was only using his best personal judgment in a confused maze does not impress us in an officer of his age, grade and prior military service. He received a competent order—acknowledged by him to be such— to report to Mildenhall. No mention whatever was made of permissible delay in reporting. On the basis of other vague and irresponsible comments and information, he chose to ignore this order and to wander where he listed. Having failed to outguess the competent order, he cannot now be heard to complain.

### III

The elements of the offense of making a false official statement are: (a) that the alleged official statement was made; (b) that it was false in certain particulars; and the maker (c) knew it to be false and (d) made it with intent to deceive. Appellant's "Arrival Report" constituted the document underlying the charge of false official statement specified against him. He contends that the statement was not false, but was in fact wholly true. There is no need for us to examine the statement in great detail, for reference to but few of its particulars will suffice to demonstrate its inaccuracy. He stated therein that he was "told" at the Burtonwood Processing Center to "come back Tuesday as there was nothing could be done over the weekend." Patently that was not what happened. A billeting sergeant at the Burtonwood Transient Officers Quarters mentioned casually that there was a shuttle airplane service to Mildenhall, but that there would be no flight until the following Tuesday because of the holiday weekend. Moreover, in the statement, he averred that when he returned to Burtonwood on Tuesday, November 13, he was "told" by "personnell" (sic) that he "should" go to Southampton. Nothing of the sort happened. Rather, he was merely informed by a civilian clerk at the Transient Officers Quarters that Lieutenant Elkins had been there and and gone to Southampton. Appellant simply advised himself to go to that city. The foregoing appears to be enough to establish the essential falsity of the accused's statement, and—taken in context—there is certainly sufficient evidence to support a conclusion that the statement was made with intent to deceive. Accordingly, we perceive no evidential weakness behind the conviction of the crime of having made a false official statement.

### IV

Finally, we turn to the conviction of the offense of submitting a false per diem and expense schedule for reimbursement. Without detailing this schedule, we may say that appellant claimed reimbursement for travel from Burtonwood to Southhampton via London, from Southampton to London, and from London to Mildenhall. As we have seen, there was, to his knowledge, no official authorization whatever for the Southampton trip—this because of the order received by him at Burtonwood to report to Mildenhall. At Burtonwood, Southampton is in an almost exactly opposite direction from Mildenhall. As we have observed earlier, whatever "order" appellant may possibly have received to report to Southampton before departing the United States, was wholly superseded by the direction to report to Mildenhall, which order was competent and so understood by the accused. The basis for the schedule claim for compensation for travel to and from Southampton necessarily was that the trip was made under orders. That was not the case, and appellant knew that it was not. Because the schedule was submitted with a view to reimbursement, the evidence is surely sufficient to support a finding that the schedule was made with intent to deceive. As in the case of the false arrival report, we find no want of sufficient support in the evidence to sustain the conviction of the crime of filing a false per diem and expense schedule.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.