UNITED STATES, Appellee

v

HERBERT W. PARKER, Private, U. S. Army, Appellant

13 USCMA 579, 33 CMR 111

No. 16,064

April 5, 1963

*Captain Ronald L. Gainer* argued the cause for Appellant, Accused. With him on the brief were *Hyman Goodman, Esquire, Lieutenant Colonel Ralph Herrod, Captain David M. Gill,* and *Captain Thomas Stapleton.*

*Captain Otis D. Chapoton* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper* and *Captain Stanley M. Wanger.*

## Opinion of the Court

KILDAY, Judge:

Appellant was brought to trial before a general court-martial convened at Fort Jay, New York, on three charges. Charge I and the specification thereunder alleged the offense of sodomy with a male, known only by the name of "Pat," on December 17, 1960, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925. Charge II and its specification charged the accused with the offense of soliciting a named male to commit the act of sodomy, on December 15, 1960, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. Charge III and its specification set forth the offense of assault on Mrs. Theresa F. Parker, on December 17, 1960, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928.

The specification of solicitation, as contained in Charge II, was stricken by the law officer. However, this was not until after the individual allegedly solicited had testified to a highly improbable story, seriously reflecting upon appellant. True enough, the law officer instructed the court-martial to disregard his testimony as to that offense. But sodomy, and similar criminal acts associated therewith, are regarded by right thinking people as a loathsome crime. In all of its aspects, it is revolting. The ancient law referred to it as "the crime against nature." And, although the elements thereof are presently spelled out specifically in some

580

jurisdictions, in former times some statutes regarded the elements of the crime as so obscene that it was defined only as "the abominable and detestable crime against nature." See, for example, Vernon's Annotated Penal Code of the State of Texas, 1952, Article 524, and the footnote there appended. Danger of serious miscarriage of justice is always present when an accused is placed on trial for this offense. It behooves all charged with the administration of justice to be alert that the accused receive a fair trial and that nothing go to the triers of fact which might increase the danger of detestation of one simply because of the nature of the offense charged.

The law officer might well have considered the advisability of directing a mistrial upon striking Charge II, evidence having been offered thereon. However, in view of the disposition we make, there is no occasion to pursue the matter further.

We point out that in this case the Government relied upon the out-of-court statement of the accused—which he repudiated under oath at his trial—and the challenged testimony of his wife, or divorced former wife, nothing more. The law officer instructed the court-martial on the necessity of corroboration of the confession or admission of the accused. Paragraph 140a, Manual for Courts-Martial, United States, 1951.

The appellant was found guilty of the two remaining charges and their specifications. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for four years. The convening authority approved the sentence. A board of review in the office of The Judge Advocate General of the Army found the findings and sentence correct in law and fact, but determined that the sentence was inappropriate and modified the same to dishonorable discharge, total forfeitures, and confinement at hard labor for two years.

This Court granted review on the two following assignments of error:

"THE LAW OFFICER ERRED IN ALLOWING THE SO-CALLED MISS GLUCK TO TESTIFY REGARDING HER ALLEGED DIVORCE DECREE, IN VIOLATION OF THE BEST EVIDENCE RULE.

"THE LAW OFFICER ERRED IN ALLOWING THE SO-CALLED MISS GLUCK TO TESTIFY ON THE MERITS OF THE CASE OVER DEFENSE OBJECTION, AS SHE WAS IN FACT THE WIFE OF THE ACCUSED."

The appellant and Theresa Frances Gluck were married in Japan in December 1959. They met in Japan where appellant was stationed in the Army and she was a civilian employee of the Army—her home being in the State of Georgia. At the time of the marriage appellant was twenty-four years of age and his wife thirty-three. Approximately eight months after the marriage his wife, according to appellant, was medically evacuated from Japan and he was returned to the United States for station at Fort Benning, Georgia. Appellant's wife continued as a civilian employee of the Army at the new post. They resided in a six-room house in Columbus, Georgia. The wife admitted that at the time of the alleged incident her marriage was pretty much "on the rocks"; that immediately prior to the alleged incident they were not living happily together and she was very much concerned about her marriage.

Upon taking the witness stand, the wife gave her name as "Theresa Frances Gluck," stating she had been divorced from appellant and had resumed her maiden name in accordance with the divorce decree. We shall develop the facts with reference to the alleged divorce more fully in our disposition of that assignment of error.

Miss Gluck testified over defense objection that after a party at the residence occupied by appellant and her as husband and wife, she observed the appellant in what appeared to be an act of anal sodomy with another male, known to her only as "Pat." This was shortly after midnight on December 17, 1960. She testified that she became upset and that appellant slapped her.

The Government placed in evidence an out-of-court statement made by the appellant, in writing, admitting such an event. Upon his trial appellant took

**581**

the stand in his own behalf and admitted having slapped his wife, but explained that she was upset and he was angry and slapped her to quiet her. The appellant admitted making the out-of-court statement to the criminal investigator, but contended he said "yes" to everything the agent asked him; that the agent had a statement previously made by his wife as to the alleged transaction, and he simply agreed to everything asked him. Appellant denied the truth of the incriminating admissions contained in the out-of-court statement, and denied he had committed an act of sodomy.

Appellant explained his making the statement by saying that when he went to work the following Monday morning the rumor was all over the post, and that people in his office would stare at him and shake their heads. His wife had told him she had been to the criminal investigating agent and, when he got to his office, the sergeant major told him he could no longer work there. Appellant testified:

"... And everywhere I went everybody seemed to know about this here thing that she thought went on. This was told around. She worked in the Headquarters building, and this passed very, very fast through the Headquarters building."

Appellant related that his first sergeant had walked him to the criminal investigations office where, in obtaining the statement, the agent referred to another statement he had before him, asking appellant, " 'Did you do this?' " Appellant would reply " 'Yes, I did.' " Appellant testified that after this incident he left his station[1] because:

"... There was no reason for me to remain on post or in Columbus any longer. Nor was there any reason for me to stay with my wife because all, everything, anything I had worked for at Benning was gone. I had nothing left."

I

The witness, Miss Gluck, testified that appellant "was my husband"; and that they were married December 11, 1959. Proof of marriage may be made without producing a marriage certificate. McCormick, Evidence, § 198, page 410 (1954). Marriage may be proven by parol by one present at the marriage. 2 Wharton, Criminal Evidence, 12th ed, § 604, page 493; Lopez v Missouri, K. & T. Ry. Co. 222 SW 695 (Texas) (1920), involving a foreign marriage; Commonwealth v Dill, 156 Mass 226, 30 NE 1016 (1892); Underhill, A Treatise on the Law of Criminal Evidence, 5th ed, § 107.

A marriage relationship shown to exist is presumed to exist until the contrary is shown. 20 Am Jur, Evidence, § 208. Where it appears a party and a witness were, at one time, husband and wife, it must be presumed, in the absence of proof to the contrary, that the relation still exists. 97 CJS, Witnesses, § 80.

However, the court record is the best evidence of a judgment or decree. McCormick, Evidence, § 198, supra; Commonwealth v Dill, supra; 2 Wharton, Criminal Evidence, supra, § 598; 20 Am Jur, Evidence, § 420; Manual for Courts-Martial, United States, 1951, paragraph 143a(1). Certified or authenticated copies are made admissible by statute in most jurisdictions, and in courts-martial. Manual for Courts-Martial, supra, paragraph 143b(2). In the trial of civil cases in the Federal courts the proof of official records is governed by Rule 44 of the Federal Rules of Civil Procedure. This rule authorizes the admission of an attested copy of such record, in addition to a number of other means authorized by specially applicable statutes or by the rules of evidence at common law. Rule 27 of the Federal Rules of Criminal Procedure, United States Code, Title 18, provides:

"An official record or an entry therein or the lack of such a record

---

[1] Appellant went absent without leave. Prior to his trial in this case he had been tried for that unauthorized absence and at the time he testified he was serving his sentence therefor.

or entry may be proved in the same manner as in civil actions."

After the self-described Miss Gluck had testified that appellant had been her husband, an out-of-court hearing was held at which the law officer heard evidence by her and argument of counsel. At this out-of-court hearing Miss Gluck testified that she obtained a divorce from appellant on June 10, 1961, in Columbus, Georgia; that she was represented by an attorney; and that her case was heard by Judge Thompson. She was then asked:

"Did you receive from that proceeding a decree from the court?"

Individual defense counsel objected to the question, and the law officer replied:

"Well, I'll overrule the objection at this time. You'll have an opportunity to cross-examine the witness concerning the basis for the witness' response to the question."

Trial counsel asked Miss Gluck, "Did Judge Thompson represent to you that you were divorced from the accused?" Objection was made to the question, argument ensued, and the question was never answered. After such argument, trial counsel developed from the witness that she remembered that Judge Thompson was located in the courthouse in Columbus, Georgia, and that she entered his offices in the courthouse. She used her maiden name, and such was a part of the decree received from the court. The law officer then developed from the witness, Miss Gluck, the grounds asserted for divorce as mental cruelty; the name of her attorney and that he practiced in Columbus. Further, she asserted that the day after the incident involved, she told appellant she would obtain a divorce. She did not have a copy of any divorce papers with her, and stated that they were located at her brother's home in Atlanta, Georgia. The witness testified that the appellant was summoned by publication and she produced a copy. Upon the witness' averment that she appeared before Judge Thompson just once, the law officer then asked:

"At that time, could you tell those present at this hearing, what transpired, just exactly what happened?"

Miss Gluck answered:
"Just my lawyer and myself entered the room and just the judge was in there and the lawyer stated that he had a client who wished a divorce on the grounds of mental cruelty, and then he proceeded to hand the judge the papers that he had. The judge looked the papers over and then they discussed the fact that my husband was a soldier in the United States Army and that he had been AWOL, and that's about it."

Defense counsel stated the contention of the defense to be that the decree of divorce, if there be one, would be the best evidence of the fact of divorce, and that the evidence of the witness was hearsay. The law officer inquired of trial counsel "have you made any effort to obtain the decree referred to?" Trial counsel replied, "I have not, sir," and explained he had learned of a question of divorce only two days previous.[2]

Miss Gluck replied to the law officer that she had examined closely and read closely the document she referred to as a divorce decree. The law officer asked her if she could, to the best of her recollection, state what it contained. As to this question defense counsel stated, "With all respect to the law officer, . . . what this witness testified to concerning the contents of the divorce decree would be hearsay." To this the law officer responded: "Very well. Your objection is noted. It's an objection based on the fact that you consider that this is not the best evidence?" After defense counsel's affirmative reply, the witness answered the law officer's question as to her recollection: "I cannot state just exactly what it states." The law officer again asked:

---

[2] It appears affirmatively from the record that trial counsel prepared to try the case on the basis the parties were married, and it may be that the defense was similarly unaware of any challenge against the marriage until the "eleventh hour." In any event, it is clear defense counsel made timely objection and asserted the husband-wife privilege.

"To the best of your recollection and belief, what did it state?" And the witness replied: "That a divorce was granted. I'm not sure whether it says on what grounds. I don't know if the grounds are contained in the decree itself. I couldn't commit myself as to the wording of the decree." She stated she received it in Columbus, Georgia, in the presence of Judge Thompson and her attorney.

If it be conceded, *arguendo*, that a judgment or decree is the pronouncement by the judge at the time it is granted, such case is not before us. Nowhere did the witness state that at any time the judge pronounced judgment or awarded a decree, nor did she state that he signed any judgment. The document as to which she testified was in the home of her brother in Atlanta, and was something she received in the courthouse in Columbus.

The best evidence of a decree would be the record of the court in the courthouse in Columbus; not something she was given in the courthouse, or something in her brother's home. Evidence by one who had personally examined the record of the court and had produced an examined copy thereof would be admissible. In United States v Stone, 13 USCMA 52, 32 CMR 52, we quoted with approval the language of the Supreme Court of Texas in Smithers v Lowrance, 100 Texas 77, 93 SW 1064 (1906). In that case the court permitted the introduction of testimony by a witness who had made an examined copy of a public record. The case last-mentioned cited Harvey v Cummings, 68 Texas 599, 5 SW 513 (1887), wherein, at page 514, the court sustained the admission into evidence of the testimony of a witness who had examined the court records in a divorce suit in Alabama, and produced a copy of the decree therein.

The following is from 1 Greenleaf, A Treatise on the Law of Evidence, 16th ed, § 508, and is illustrative of the particularity required in the proof of records:

"**Examined Copies.** The proof of records, by an examined copy, is by producing a witness who has compared the copy with the original, or with what the officer of the Court or any other person read as the contents of the record. It is not necessary for the persons examining to exchange papers, and read them alternately both ways. But it should appear that the record, from which the copy was taken, was found in the proper place of deposit, or in the hands of the officer, in whose custody the records of the Court are kept. And this cannot be shown by any light reflected from the record itself, which may have been improperly placed where it was found. Nothing can be borrowed *ex visceribus judicii*, until the original is proved to have come from the proper Court. And the record itself must have been finally completed before the copy is admissible in evidence. The minutes from which the judgment is made up, and even a judgment in paper, signed by the master, are not proper evidence of the record."

In this case the witness did not state she had examined the records of the court, nor did she produce an examined or verified copy. Indeed, she frankly admitted: "I cannot state just exactly what it states." Her testimony was not as to the contents of the supposed decree, but her legal conclusion that it granted a divorce and restored her maiden name. The testimony of this witness as to the decree of divorce should not have been received. Miss Gluck was the only prosecution witness to the alleged sodomy. Under the circumstances of this case, her qualification as a witness by proof of having been divorced is not collateral.[3] How-

---

[3] In this connection, the attention of the interested reader is invited to Tompkins v Commonwealth, 117 Ky 138, 77 SW 712 (1903), which involved a similar question. That case held that where, in a prosecution for homicide, a witness testifies she is the widow of the decedent, a presumption arises that she was divorced from the accused—her former husband—before marrying decedent; hence parol evidence of the divorce, instead of the offer of the judg-

ever, if collateral, its importance would constitute a breach of the discretion vested in the law officer. The action of the law officer in overruling the objection of the defense to the testimony of Miss Gluck as to being divorced and as to the contents of any such decree of divorce constituted error.

## II

The disposition we have made of the first granted issue requires that we consider the question of whether the law officer erred in allowing the witness to testify on the merits over defense objection. That is to say we must consider, for aught this record properly establishes, that she was appellant's wife. Simply stated, the question before us is whether a spouse may, as a witness, testify against the accused spouse charged with sodomy upon a third party, over the assertion of privilege by the accused spouse.

That question, in turn, requires determination of whether appellant's wife would be injured by such an offense on his part. Paragraph 148e, Manual for Courts-Martial, United States, 1951, recognizes that exception to the general rule as follows:

"Husband and wife are competent witnesses in favor of each other. Although husband and wife are also competent witnesses against each other, the general rule is that both are entitled to a privilege prohibiting the use of one of them as a witness (sworn or unsworn) against the other. This privilege does not exist, however, when the husband or wife is the individual or one of the individuals injured by the offense with which the other spouse is charged, as in a prosecution for an assault upon one spouse by the other, for bigamy, polygamy, unlawful cohabitation, . . . for using or transporting the wife for 'white slave' or other immoral purposes. . . ."

In United States v Wise, 10 USCMA 539, 29 CMR 105, this Court was unanimous in holding that the accused's wife was a competent witness and could voluntarily testify against him on a bigamy charge. The majority opinion was by Chief Judge Quinn; Judge Ferguson concurred. Judge Latimer concurred in that portion of the opinion, but dissented as to other portions. However, Chief Judge Quinn based his opinion on the fact that Congress had, by the Act of March 3, 1887, 24 Stat 635, 28 United States Code (1940 ed), section 633, provided that " 'in any prosecution for bigamy . . . under any statute of the United States' one spouse is a 'competent witness' against the other but could not be 'compelled to testify . . . without the consent' of the other." He concluded that section 633, supra, was omitted from the 1948 revision of Title 28 of the United States Code for the simple reason that a half century of experience under the statute had fixed the exception as a rule of evidence within Rule 26 of the Federal Rules of Criminal Procedure promulgated by the Supreme Court under the provisions of United States Code, Title 18, section 687.

In the earlier case of United States v Leach, 7 USCMA 388, 22 CMR 178, the opinion by Judge Latimer, stated:

". . . It must be acknowledged that the provision [Manual for Courts-Martial, United States, 1951, paragraph 148e] setting out the excepted crimes does not mention adultery. However, it would be the height of inconsistency to interpret the provision to mean that a husband did not have a privilege to prevent his wife from testifying against him when he had committed the less serious offense of unlawful cohabitation, but that the privilege extended to him when the offense charged was adultery."

In that case, Judge Ferguson concurred only in the result, stating:

"I agree that the wife's testimony did not prejudice the accused. That adultery is an offense against the wife is to me not only 'conceded in

---

ment record, was not grounds for reversal. There is no evidence in the case at bar that Miss Gluck had re-

married. Indeed, the record reflects she had not.

morals' but 'ought to be plain in law.' Wigmore, 3d ed, § 2239(3)."

In the *Leach* case, Chief Judge Quinn concurred in part and dissented in part. He cited Bassett v United States, 137 US 496, 506, 34 L ed 762, 11 S Ct 165 (1890), and quoted at length from Mr. Justice Brewer, who wrote for a unanimous Supreme Court, the last sentence of such quotation being, " 'We conclude, therefore, that under this Statute the wife was an incompetent witness as against her husband.' "

See, also, with regard to this question, United States v Wooldridge, 10 USCMA 510, 28 CMR 76.

As heretofore indicated, the crime of sodomy is not among those sex offenses enumerated in paragraph 148e, Manual for Courts-Martial, supra, as offenses against the spouse. We are unaware of any case in which it is held that sodomy with a third party is an offense against the spouse. Certainly no such holding has been called to our attention.

We need not elaborate on the common-law rule which rendered husband and wife incompetent to testify either for or against each other and the subsequent developments thereof. We do deem it important to point out that if the spouse, in this case, was competent to testify over the objection of the appellant and his consequent assertion of his privilege, it is because of an exception to the rule in those cases where the offense is against the witness spouse. It is clear that the exception is based upon necessity. It is also clear that the basic rule is based upon public policy. The public policy is born of a desire to foster peace in the family and to preserve the marital relationship. Hawkins v United States, 358 US 74, 3 L ed 2d 125, 79 S Ct 136 (1958). United States v Walker, 176 F2d 564 (CA2d Cir) (1949).

If the exclusion of the testimony of the spouse were based upon the despicable nature of the offense charged against the accused spouse, we would have little difficulty in holding that a spouse might testify against one

charged with the "abominable and detestable crime against nature." However, such is not the criterion. On the contrary, the more despicable the crime recounted in the tale told by the witness spouse, the more disrupting of peace and the marital relation it becomes.

As has been noted, sodomy is not included in the excepted offenses listed in paragraph 148e of the █ Manual, supra. Nor has any other authority holding it to be an offense against the wife been called to our attention. We are unwilling, therefore, to so hold,[4] and particularly do we decline to draw any such conclusion merely because of the detestable nature of the offense involved.

Our position is consistent with the approach of the Supreme Court. That there is reluctance by that tribunal to enlarge the offenses included in the exception is well illustrated by the two most recent decisions in that Court. See Hawkins v United States, supra, and Wyatt v United States, 362 US 525, 4 L ed 2d 931, 80 S Ct 901 (1960). We point out the following limiting language in the latter case, at 362 US 351: "Again, we deal here only with a Mann Act prosecution, and intimate no view on the applicability of the privilege of either a party or a witness similarly circumstanced in other situations." See also the language of Mr. Chief Justice Warren in his dissent in *Wyatt*, 362 US at page 535, as to the powers of Federal courts to interpret the common-law principles of evidence "in the light of reason and experience" (Federal Rules of Criminal Procedure, Rule 26, United States Code, Title 18), as contrasted with the legislative power of Congress.

Considering the extremity of his situation, this appellant did a competent job in exemplifying the reason for the common-law rule. His wife made a statement to a criminal investigator on Saturday. When, on Monday, appellant arrived at his place of duty in the same headquarters where his wife was employed, the rumor "was all over post"; people in his office would "stare and

[4] In view of the conclusion we reach, there is no occasion to consider the possible impact of United States v Smith, 13 USCMA 105, 32 CMR 105.

shake their head"; the sergeant major told him he could no longer work there —apparently, in the sergeant major's mind he was already guilty of the offense; everywhere he went everybody seemed to know about this thing, it "was told around. . . . and this passed very, very fast through the Headquarters building."

Appellant was asked, at his trial, the following questions and gave the following answers:

"Q Did you love your wife?
"A I did, sir.

"Q Do you love her now?
"A No, sir, I don't.

"Q When did you stop loving her?
"A After this statement that I— when I was told what I was being accused of, and this, I did not fall out of love with my wife. However, since I have been in confinement for this period I have had considerable time to think about it and to think about our marriage, and our marriage was not—I'm no authority on marriage but anyway I don't think our marriage was a very good match. That's how I'll put it."

It would have been most unusual if appellant could have continued to love his wife after she had accused him of such reprehensible conduct. The record quite thoroughly justifies the wisdom of the ancient common-law rule. An exception to the rule permitting a spouse to testify against the accused spouse charged with sodomy with a third party has not been established by statute or decision. It was prejudicial error to permit the spouse to testify on the merits.

What the situation might be had the prosecution properly established that appellant and his wife were divorced is not before us. The decision of the board of review as to Charge I is reversed because of the prejudicial error admitting the testimony of the wife as to the divorce decree and the facts of the alleged offense. The appellant's conviction for sodomy is set aside. The record will be returned to The Judge Advocate General of the Army for reference to a board of review. The board of review may reassess an appropriate sentence for the valid conviction as to Charge III, or a rehearing may be ordered as to Charge I and the sentence for both offenses.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

In my opinion, the majority err by not recognizing the true nature of the issue before us. We are not dealing with a matter going to the accused's guilt or innocence, but with the collateral and preliminary question of the competency of a witness.[1]

Determining the competency of a witness is a question of law for the trial judge. He is "not bound by the ordinary rules of evidence applicable to evidence offered" on the merits. Wigmore, Evidence, 3d ed, § 487. For example, hearsay evidence is competent on the question of the unavailability of a witness as a predicate for admission of his deposition. United States v Miller, 7 USCMA 23, 21 CMR 149; Frederick v Yellow Cab Co. of Philadelphia, 200 F 2d 483 (CA 3d Cir) (1952); see also United States v Samuels, 10 USCMA 206, 27 CMR 280. Similarly, hearsay testimony is admissible on the question of the competency of a young person to be a witness. See Wheeler v United States, 159 US 523, 40 L ed 244, 16 S Ct 93. The very point in issue here, namely, whether, in order to qualify as a competent witness against her husband, a wife may testify to obtaining a divorce decree, was sustained by the Kentucky Court of Appeals in Tompkins v Commonwealth, 117 Ky 138, 77 SW 712 (1903). The court distinguished the question of competency because of dissolution of the marital union from "a proceeding involving directly the legitimacy" of the divorce itself; it held that competency is "col-

---

[1] The principal opinion also suffers from the failure to take account of the direct impact upon the wife's emotional and mental health which resulted from not only witnessing the performance of the "abominable and detestable crime against nature," but having it figuratively thrown into her teeth by the accused. See Battalla v State, 10 NY2d 237, 176 NE2d 729,

lateral" to the merits of the case, and that the wife's testimony that she had been divorced is sufficient to qualify her as a witness, without production of the decree. Cf. Tharp v Commonwealth, 241 Ky 828, 45 SW2d 480 (1932).

Even constitutional questions of a preliminary nature, such as the existence of probable cause for an arrest or search, may be determined upon the basis of reliable hearsay testimony. Draper v United States, 358 US 307, 3 L ed 2d 327, 79 S Ct 329; United States v Ness, 13 USCMA 18, 32 CMR 18. I would, therefore, sustain the law officer's ruling on the competency of the witness, and affirm the accused's conviction.