UNITED STATES, Appellee

v

ANTULIO T. ACOSTA, Yeoman Second Class, U. S. Navy, Appellant

19 USCMA 341, 41 CMR 341

*Lieutenant Kenneth F. Ripple,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Captain Michael I. Walling,* USMCR.

*Lieutenant James E. Akers,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Commander Richard L. Fruchterman, Jr.,* JAGC, USN.

### Opinion of the Court

QUINN, Chief Judge:

After he had been married five years to Joan and had had five children with her, the accused was charged with wrongful cohabitation with Joan (Charge III and its specification), with making false statements in an application for Government housing for Joan and the children and in a Personal History Statement (Charge I and its specifications), and with fraudulently obtaining a family dislocation allowance when he was transferred from California to Hawaii (Charge II and its specification). The charges were based upon information indicating the accused had previously married Esther in 1957, and that divorce proceedings instituted by her in California in 1959 were dismissed in 1965 by the court on its own motion, as provided by California law, because Esther had failed to bring the action to trial within five years after filing the complaint. According to the accused, when he was informed his marriage to Joan was not "valid," he asked to be "let . . . go . . . [to] take care of it right now, . . . [but] they said, 'No.'" Cf. Bureau of Naval Personnel Manual, article 6210120.16a.

A special court-martial convicted the accused of the charges and sentenced him to a bad-conduct discharge, with a "unanimous recommendation" that the discharge be suspended for a probationary period. The convening authority approved the findings of guilty and the sentence, with no provision for proba-

tion because, in his opinion, there was "strong circumstantial evidence" to indicate the accused had "altered many entries" in his service record "to better his military record or to cover up his sordid marital situation." On review, the supervisory authority rejected the recommendation of his staff judge advocate to dismiss all the charges and affirmed the findings of guilty, except those relating to Charge II and its specification, which the staff judge advocate had indicated were not supported by the evidence. He also concluded that the sentence approved by the convening authority was "entirely appropriate and just." We granted further review to consider a variety of assignments of error.

The accused's principal defense to the charges was predicated upon a contention that he believed in good faith that the divorce proceedings instituted by Esther had become final and he was thereafter competent to marry Joan. There is evidence that he entered an appearance in the case and a waiver of notice of further proceedings. He testified he gave Esther $400.00, to cover counsel fees and court costs and was informed that under California law a divorce becomes final a year after the decree of dissolution is entered. About a year after he had entered his appearance, Esther arranged to meet him. At this meeting, Esther advised him the divorce was final and he was "a free man." About eleven months later, he

married Joan in a church ceremony at Gardena, California.

We consider first whether the allegations of the specification of Charge III state an offense. The point was not raised at trial, but it is one which may be considered for the first time on appeal. United States v Fout, 3 USCMA 565, 13 CMR 121 (1953); United States v Brice, 17 USCMA 336, 38 CMR 134 (1967). In material part, the specification alleges that during a specified period the accused did, "openly and notoriously cohabit with Joan (STEINECKE), also known as Joan ACOSTA, a woman not his wife." The specification contains no specific words of criminality as provided in the standard forms. See Manual for Courts-Martial, United States, 1969 (Revised edition), Appendix 6c, Form 188; United States v Andrews, 9 CMR 667 (1953), petition denied, 3 USCMA 815, 11 CMR 248 (1953). The question is whether criminality is reasonably implied by the word "cohabit."

Cohabit has varying meanings. It may merely mean "to dwell with or reside together" as in the "same family"; or it may mean dwelling together "ostensibly and apparently in wedlock, when, in fact or in law, no marriage exists." United States v Musser, 4 Utah 153, 7 Pac 389 (1885); United States v Ketchel, 2 CMR (AF) 126 (1949). The former usage imports lawful cohabitation; the latter indicates an unlawful association. As far as this specification indicates, Joan Steinecke or Joan Acosta might be the accused's sister, aunt, or other female relative. The dwelling together of blood relatives in a common household, openly and notoriously, implies no wrongful conduct. If the relationship is in fact illegal, words of criminality are necessary to reflect the wrongfulness of the relationship. United States v Mellinger, 60 BR 199, 214 (1946). See United States v Julius, 8 USCMA 523, 25 CMR 27 (1957); Manual for Courts-Martial, United States, 1951, paragraph 28c. As the board of review noted in the *Mellinger* case, inclusion of the word "wrongful" in a charge of this kind

serves to indicate that the conduct is to the discredit of the armed forces. In United States v Leach, 7 USCMA 388, 401, 22 CMR 178 (1956), the criminality of the relationship was set out in the allegation that the cohabitation brought "discredit upon the military service." See also United States v Andrews, supra. No similar implication of wrongfulness appears in the allegations of the specification before us. The specification of Charge III is thus insufficient to allege the offense of wrongful cohabitation. The findings of guilty as to this charge must, therefore, be set aside. United States v Brice and United States v Fout, both supra.

Specification 1, Charge I, alleges in substance that, with intent to deceive, the accused listed Joan as his wife and the children of his union with her as his dependents on a Government form requesting Government housing at his new post in Hawaii. California law recognizes the obligation of support of an illegitimate child by his natural father (Penal Code of California, § 270, and Civil Code of California, § 196a) and Federal revenue law authorizes a dependency exemption for an illegitimate child (26 USC § 152), but by statutory definition an illegitimate child is not a dependent for determination of allowance for quarters. 37 USC § 401. Certain testimony suggests that the latter statute is the basis for determining dependency for the purpose of assignment to military housing. However, there is testi- mony to indicate the accused honestly believed that the children of his union with Joan were his dependents. Since that belief would tend to negate the existence of an intent to deceive in connection with his application for housing, it should have been, but was not, the subject of instructions to the court-martial. An instructional defect also appears in regard to the allegation that the accused lied when he noted that Joan was his wife. The same defect applies to specification 2, so we shall consider it in the discussion of that specification.

Specification 2, Charge I, alleges that, with intent to deceive, the accused listed

Joan as his spouse, and failed to list Esther and the children of his union with her, in the section titled "Family" of a Personal History Statement he filed in June 1967. The document was "requested" by the accused's command for use in a "background investigation" for "security clearance purposes." The form states that the information "is for·official use only and will be maintained in confidence." This representation presents a serious question as to whether the information furnished by the accused could be used against him in a court-martial for any purpose other than that he made a false statement, but we need not decide the issue. United States v Haynes, 9 USCMA 792, 27 CMR 60 (1958). The instructions present a fair risk that the court members understood them to impose upon the accused the burden of proving affirmatively that he believed he was lawfully divorced from Esther and lawfully married to Joan.

With slight variation in language, the instructions as to specifications 1 and 2 provided that "if, in fact, the accused was under the honest but erroneous belief that he was legally divorced from his first wife . . . and that he was legally married to Joan . . . the court must find the accused not guilty."

We condemned similar instructions as tending to shift the burden of proof from the Government to the accused in United States v Odenweller, 13 USCMA 71, 32 CMR 71 (1962), and United States v Gilbert, 16 USCMA 446, 37 CMR 66 (1966). Other instructions correctly placed upon the Government the burden of proving beyond a reasonable doubt that the accused in fact knew he was not legally divorced, but we cannot be certain that the court was guided by these, rather than the quoted, instructions. The error requires reversal of the findings of guilty.

More than two years have elapsed since the accused's conviction. His period of enlistment expired before completion of review by the supervisory authority, and a previously approved agreement to extend the enlistment was cancelled. These circumstances and the proceedings of record convince us that the interests of justice would be served by terminating the case at this time. United States v Evans, 18 USCMA 3, 39 CMR 3 (1968).

The decision of the board of review is reversed. The findings of·guilty and the sentence are set aside, and the charges are ordered dismissed.

Judges FERGUSON and DARDEN concur.