UNITED STATES, Appellee,

v.

Johnnie M. ALLEN, Technical
Sergeant, U.S. Air Force,
Appellant.

No. 58,810.
ACM 25817.

U.S. Court of Military Appeals.

Oct. 25, 1988.

For Appellant: *Major Deborah A. Baker*
(argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Captain Marc Van Nuys*
(argued); *Colonel Joe R. Lamport, Lieu-
tenant Colonel Robert E. Giovagnoni;
Lieutenant Colonel Barret E. Kean,
USAFR* (on brief); *Captain Robert E.
Marconi, USAFR.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-
martial composed of a military judge alone
at Seymour-Johnson Air Force Base, North
Carolina, in November of 1986. Contrary

to his pleas, he was found guilty of making a false official statement and signing three false official documents, committing larceny, wrongfully endeavoring to prevent testimony by a witness, and wrongfully endeavoring to impede an investigation, in violation of Articles 107, 121, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 907, 921, and 934, respectively. He was sentenced to confinement for 14 months, forfeiture of $200 pay per month for 12 months, and reduction in grade to sergeant (E–4). The convening authority approved the sentence. The Court of Military Review affirmed in a short-form opinion.

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO DISMISS THE CHARGES ON THE BASIS OF THE NOVEMBER 1986 DIVORCE DECREE DECLARING THE DECEMBER 1984 DIVORCE DECREE VOID *AB INITIO.*

We hold that the military judge did not err in denying appellant's motion to dismiss any of the Charges in this case on the basis of the state court's divorce-revocation decree. *See* R.C.M. 907, Manual for Courts-Martial, United States, 1984. However, we conclude that the prosecution failed to introduce sufficient evidence to support some of the findings of guilty in this case (*see* R.C.M. 917). Moreover, we hold that the judge's special finding of fact was erroneous as a matter of law. Art. 51(d), UCMJ, 10 U.S.C. § 851(d); *see* R.C.M. 918, Discussion.

---

The record shows that appellant and his wife, Sherri Allen, were married in South Carolina in October 1982. During their marriage, they separated and reconciled several times. In October 1984, Sherri Allen filed for divorce on the basis that the couple, then residents of North Carolina, had lived apart for one year, as permitted by North Carolina law. (They had not, in fact, been separated for one year when she filed.) Appellant received notice of the di-

vorce proceeding but took no action. The divorce was granted by the trial court of North Carolina on December 10, 1984. The couple lived together after the divorce and purchased a house as husband and wife in 1985.

After another separation in 1986, Sherri Allen told appellant's commanding officer that appellant had been receiving married BAQ payments even though he was divorced. Appellant was then charged with making several false official statements concerning his marital status and larceny of government funds dispensed to him on the basis of his marital status.

After the Article 32, UCMJ, 10 U.S.C. § 832, investigation, appellant moved the North Carolina state court which had granted the divorce decree to set it aside as fraudulently obtained. This action was based on Sherri Allen's Article 32 testimony that she and appellant had cohabited during the year preceding the filing of the complaint. On November 14, 1986, the court issued a decree declaring the Allens' December 1984 divorce void *ab initio.*

Because of the 1986 divorce-revocation decree, appellant moved that the charges against him be dismissed. In short, appellant maintained that he is married and has always been legally married in the eyes of North Carolina. Therefore, he argues that he could not be convicted for making true statements. The military judge denied the motion to dismiss and a later motion for findings of not guilty of the charges. He later found appellant guilty of the false-statement and larceny offenses and issued a special finding which stated:

A special finding relating to this matter is as follows: *The divorce granted on 10 December 1984 was in existence and valid until 14 November 1986 at 3:47 p.m. which was approximately 3 days prior to the commencement of this trial.* The divorce decree was set aside and declared void *ab initio* on 14 November 1986. The accused admitted to receiving the original summons concerning the 10 December 1984 divorce and the fact that

he was advised by his wife that the divorce had become final, the decree issued, and that they were in fact divorced. Through the period December 1984 until June 1986 the accused held himself out as a divorced man with an ex-wife except when dealing with Finance, BAQ recertification and military ID card matters where he then held himself out as a married man with a wife who was his dependent.

The court must consider the facts and the statuses as they existed when the statements were then made or the documents then executed. *The action by the North Carolina General Jurisdiction Court on a domestic issue cannot nullify the basis of criminal intent and or action of an individual during the period when North Carolina recognized the parties as divorced.*

An element of the false statement is the accused's knowing statement to be false at the time of the making. So the time of the making is the critical point to be considered. *North Carolina declaring a marriage void ab initio two years later still does not change the material status at the time of the making of the statement.* Using this rationale there is no requirement for the court to look to an offense under Article 80, an attempt. In other words, the 14 November 1986 decision does not create a change in facts mandating a finding of attempting to make a false statement under an Article 80 offense, as the court must look at the facts as they existed at the time the statement or statements or documents were generated or executed.

The right to receive the married with dependent BAQ entitlement rate is lost when one is divorced and does not become a vested entitlement again until one is remarried. Thus the right to receive the married rate did not come into existence until 14 November 1986. Prior to that date the Air Force had the greater possessory interest in the monies and the BAQ entitlement. A greater possessory interest than the accused had. And it was only after the 14 November 1986 decision that the right to the monetary payments concerning the BAQ with dependent rate again came into the existence of Sergeant Allen.

(Emphasis added.)

---

A preliminary matter to be addressed is the scope of the issue which we are reviewing. It asks whether the military judge erred in denying the defense motion to dismiss the charges against appellant on the basis of the November 14, 1986, North Carolina divorce-revocation decree. We note, however, that appellant further moved that findings of not guilty be entered on this basis, and he appealed the denial of this motion at the Court of Military Review. Further examination of this record raises an additional, but nonetheless related, question concerning the propriety of the judge's special finding in this case. Accordingly, in light of the briefs filed in this case, the oral arguments presented to this Court, and our authority under Article 67, UCMJ, 10 U.S.C. § 867, we will not limit this appeal to the narrow issue granted review.

■ Turning first to the judge's ruling on the motion to dismiss, we accept appellate government counsel's argument that this motion was not well founded as a matter of law. *See* R.C.M. 907(b)(1)(B). Appellant at trial asserted that the challenged specifications failed to state an offense because a divorce-revocation decree was granted 3 days prior to his court-martial. This decree might rebut the Government's proof of certain elements of the charged offenses (*see* R.C.M. 916(a)), but it had no impact on the legal sufficiency of the specifications. *United States v. Groves,* 23 M.J. 374, 375 (CMA 1987). *Cf.* R.C.M. 307(c)(3). Accordingly, this issue is without merit.

Turning next to the issue of the sufficiency of the Government's proof, we note that the Government must present sufficient evidence from which a "rational" fact-

finder can find beyond a reasonable doubt that appellant was guilty of the charged offenses. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Hart*, 25 MJ 143 (CMA 1987). The proof offered by the Government must establish each and every element of the charged offenses as defined by Congress.

Article 107 prohibits making "false official statements" by a servicemember. The purpose of this statute is "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." *United States v. Hutchins*, 5 U.S.C.M.A. 422, 427, 18 C.M.R. 46, 51 (1955), quoting *United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). Congress particularly defined this military crime as follows: "Any person subject to this chapter who, with intent to deceive, signs any *false* record, return, regulation, order, or other official document, knowing it to be false, or makes any other *false* official statement knowing it to be false, shall be punished as a court-martial may direct." (Emphasis added.) "[T]he cornerstone of" this "offense is ... the falsity of the [official] statement." *See United States v. Race*, 632 F.2d 1114, 1119 (4th Cir.1980).

The above statute does not expressly delineate the standard under which an official statement might properly be found false or untrue. *Cf. United States v. Ariola*, 2 U.S.C.M.A. 637, 10 C.M.R. 135 (1953). Conceivably, a statement concerning one's marital status could be evaluated for falsity in light of one's personal opinion, religious precepts, state law, or even federal law. *See* 37 U.S.C. § 423; *see generally McCarty v. McCarty*, 453 U.S. 210, 220–21, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581–82, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). However, the appropriate standard to determine this factual question at a court-martial is that expressly pleaded by the Government as the basis for its allegation that appellant made a false official statement. *See United States v. Acosta*, 19 U.S.C.M.A. 341, 343, 41 C.M.R.

341, 343 (1970); *United States v. Cliette*, 2 U.S.C.M.A. 240, 243, 8 C.M.R. 40, 43 (1953); para. 31 f, Part IV, Manual, *supra*. In other words, the truth or falsity of an accused's official statement depends upon the matter asserted in that statement and the governmental context in which the statement was made. *Id; see also United States v. Race, supra*. If this were not the law, an accused could be found guilty of making a false official statement for providing a truthful answer as requested by the government form but which was nonetheless false for some other purpose not covered by the form. *See generally United States v. Seay*, 718 F.2d 1279, 1285 (4th Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984).

■ Appellant was found guilty of making three false official statements in violation of Article 107. The specifications allege:

SPECIFICATION 2: In that ... [the accused] did, at Seymour Johnson Air Force Base, North Carolina, on or about 28 May 1986, with intent to deceive, *sign an official document, to wit: DD Form 93 (1 June 75), Record of Emergency Data*, which document was false in that it indicated Sherri L. Allen was Technical Sergeant Johnnie M. Allen's wife and that her address was 700 N. Spence, Goldsboro, North Carolina, at the time of signing, and was then known by the said Technical Sergeant Johnnie M. Allen, to be so false.

SPECIFICATION 3: In that ... [the accused] did, at Seymour Johnson Air Force Base, North Carolina, on or about 19 August 1985, with intent to deceive, *sign an official document, to wit: DD Form 1172, Application for Uniform Services Identification and Privilege Card*, which document was false in that Technical Sergeant Johnnie M. Allen indicated thereon that he was married to Sherri L. Allen, and was then known by the said Technical Sergeant Johnnie M. Allen, to be so false.

SPECIFICATION 4: In that ... [the accused] did, at Seymour Johnson Air

Force Base, North Carolina, on or about 17 September 1985, with intent to deceive, *sign an official document, to wit: AF Form 987, Biennial Recertification of Entitlement to Basic Allowance for Quarters, which document was false in that Technical Sergeant Johnnie M. Allen therein identified Sherri L. Allen as his dependent spouse,* and was then known by the said Technical Sergeant Johnnie M. Allen to be so false.

(Emphasis added.) Each specification pleads a particular federal form (DD Form 93 (1 June 75); DD Form 1172; AF Form 987), and the alleged false forms signed by appellant were admitted as evidence in this case. However, neither the particular regulations nor any other evidence of regulatory practice concerning these forms was admitted in this case which established what constituted marriage for the purposes of these official statements.[1] *Cf. United States v. Acosta* and *United States v. Seay,* both *supra.* Accordingly, the Government failed to prove what a true statement would be in the context of these pleadings, and, consequently, did not show beyond a reasonable doubt that appellant's statements were false as required by Article 107.

The military judge nevertheless found appellant guilty of making on three occasions the false official statement that he was married to Sherri Allen. In his special finding he further indicated that Article 107 authorized him to find as a matter of fact that appellant was divorced when he made these statements despite a subsequently obtained court decree declaring his North Carolina divorce void *ab initio.* He reasoned that Article 107's implied concern with the factual falsity of the statements

at the time of their making rendered irrelevant subsequent events which might legally impact on their veracity.

■ In this regard, we note that, although the existence of a marriage is a question of fact for a court-martial, it normally is a matter to be decided in accordance with state law. *United States v. Richardson,* 1 U.S.C.M.A. 558, 564, 4 C.M.R. 150, 156 (1952); *see United States v. Patrick,* 2 U.S.C.M.A. 189, 7 C.M.R. 65 (1953). The fact of a divorce, as the termination of the marriage, is also usually decided in accordance with applicable state law. In apparent accord with these principles, the judge here initially relied on the earlier decree from the state court to find that appellant was divorced and that his statements to the contrary were false. However, for him to ignore an equally valid decree from the same state court solely on the basis of its chronological occurrence without regard to its legal relevance was unjustified. Nothing in Article 107 or its legislative history suggests such a conclusion or *per se* undermines the legal relevance of the second decree on this mixed question of fact and law. *See generally* Mil.R.Evid. 401 and 402, Manual, *supra.*

■ A final point we would make in this case concerns the failure of the judge to give full faith and credit to the North Carolina divorce-revocation decree. *See* 28 U.S.C. § 1738. The judge did recognize that, as a result of this divorce-revocation decree, appellant was married to Sherri Allen at the time of this court-martial. *United States v. Tipton,* 23 M.J. 338 (CMA 1987). *See generally United States v. Parker,* 13 U.S.C.M.A. 579, 33 C.M.R. 111 (1963). However, he surprisingly [2] refused to credit

---

1. Some testimony concerning the processing of these forms at the command level was admitted at this court-martial. This testimony did not particularly address the legal ramifications of the divorce-revocation decree on the regulatory programs involved. Moreover, absent evidence of the controlling regulations, such testimony was not sufficient to establish the legal standard of marriage at issue in the charged specifications.

2. The military judge earlier in the trial conceded that he was bound by the divorce-revocation decree. He stated:

MJ: Looking at *Maxwell v. Woods,* 267 Southeastern Reporter, 2nd, at 516, one would derive from looking at that case that the marriage is a voidable marriage, not void *ab initio,* under North Carolina Law; however, this court is required to follow the Judgment that is handed down by the Domestic Court in North Carolina, which declared the

that portion of the revocation decree which voided the earlier divorce decree *ab initio*. He categorically asserted this decree could not nullify the "action of an individual during the period when North Carolina recognized the parties as divorced." No authority—federal, state, or military—was cited for this legal conclusion.

The question of the effect of a divorce-revocation decree on acts done by the parties prior to issuance of this decree is a well-recognized question of state law. *See generally* 24 Am Jur 2d, Divorce and Separation § 466 (1983). Moreover, 28 U.S.C. § 1738 specifically states that "judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State." The failure of the judge to decide this question in light of applicable North Carolina statutes and case law, absent some prevailing federal interest properly proven, was also legal error.[3] *See generally McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 287–88, 104 S.Ct. 1799, 1801, 80 L.Ed.2d 302 (1984); *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80–84, 104 S.Ct. 892, 895–97, 79 L.Ed.2d 56 (1984).

Our holding today relates to three of the false-official-statement offenses and the larceny offense, since it also depended on a lawful determination of appellant's marital status. *See* paras. 30232–30233 and 70741–70743, DOD Military Pay and Allowances Entitlements Manual (1984 and 1985). We recognize that the problem of interpreting federal regulations and state law may be difficult. However, Congress' will in this matter cannot be ignored. U.S. Const. art. I, § 8, cl. 14; Arts. 107 and 121.

The decision of the United States Air Force Court of Military Review is reversed as to specifications 2, 3, and 4 of Charge I; Charge II and its specification; and the sentence. The findings of guilty thereon are set aside and those specifications are dismissed.[4] The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for reassessment of the sentence based on the remaining findings of guilty.[5]

Chief Judge EVERETT concurs.

COX, Judge (concurring in part and dissenting in part):

I agree with my Brothers that appellant was not guilty of signing false official statements and larceny. Instead, the court-martial should have given full faith and credit to the North Carolina decree. "It is a well-established rule that a state has the power to determine how its residents enter into a marital relationship."

---

marriage void *ab initio*, or at inception. Now understanding that, that thinking, the motion to dismiss is denied. But I would caution you, Government, that understanding void *ab initio*, I believe you have a tremendous problem regarding your larceny specification, in that, if the marriage was never such—it was never set aside, then it would appear that Sergeant Anderson [sic] would probably be entitled to that money which he drew.

3. The authorities cited by the Government at trial do support the proposition that a divorce decree secured by fraud in North Carolina is voidable. *See Maxwell v. Woods,* 47 N.C.App. 495, 267 S.E.2d 516 (1980); *Carpenter v. Carpenter,* 244 N.C. 286, 93 S.E.2d 617, 625–26 (1956). However, whether this characterization of the divorce precludes a subsequent declaration by a court that this divorce was truly void *ab initio* or that the revocation relates back to date of the issuance of the void decree is not clear. *Cf. Ivery v. Ivery,* 258 N.C. 721, 129

S.E.2d 457, 462–63 (1963). *See generally* 52 Am Jur 2d, Marriage §§ 103–05 (1970). *See Patrick v. Patrick,* 245 N.C. 195, 95 S.E.2d 585, 588 (1956). *See generally* 24 Am Jur 2d, Divorce and Separation § 466 (1983).

4. It must be noted that the military judge in his special finding expressly declined to make an attempt finding under Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880, with respect to these charges. Accordingly, we decline to reach the remand issue discussed by Judge Cox.

5. Before acting on the sentence, the Court of Military Review should consider whether specification 1 of Charge I is barred by the statute of limitations. *See United States v. Salter,* 20 M.J. 116 (CMA 1985). If the offense is barred, that court is authorized to take appropriate action and then reassess the sentence based on the remaining findings of guilty. After its decision, Article 67(c), UCMJ, 10 U.S.C. § 867(c), will apply.

*United States v. Seay,* 718 F.2d 1279, 1285 (4th Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984), *citing Maynard v. Hill,* 125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.Ed. 654 (1887). "Variations in state law concerning the prerequisites to a valid marriage may work to the advantage of a resident." *Id.* The North Carolina court's declaration that appellant's divorce was void *ab initio* had the legal effect of rendering appellant married throughout the time period. He thereby became liable for support and maintenance of his wife, and he may have incurred other liabilities imposed upon him by North Carolina law. If he was liable for support and maintenance, then he was entitled to dependent benefits.

More particularly, his conduct failed to satisfy the elements of the offenses because the monies received by him were rightfully his, and his representations of being married were, in retrospect, correct. Accordingly he did not wrongfully take, obtain, or withhold the property of another, and he did not sign an official statement that was false. *See* paras. 31 b and 46 b, Part IV, Manual for Courts-Martial, United States, 1984.

To me this aspect of the case is relatively simple. If a servicemember is accused of a crime arising out of his marital status and the issue is whether he was married, then the state has the power to declare his status. Here, the state declared that his divorce was void *ab initio.* That ends the matter as far as I am concerned. I would not assume that the state trial judge issued an order in contravention of North Carolina law or that appellant's attorney would attempt to defraud the state court or the court-martial, for such would be grounds for disbarment in most jurisdictions.

The Government was not without remedy if it thought the order was issued contrary to North Carolina law. Most jurisdictions have procedures whereby parties aggrieved by a judgment can interplead into the action and have their rights declared. Apparently, this was not done here. The Government cannot now be heard to complain that the order was issued contrary to law. This does not, however, end the inquiry for me.

Implicit in the judge's findings is rejection of appellant's claim that he did not realize he was divorced and, thus, he lacked the requisite intent to commit the offenses. Therefore, for purposes of my analysis, I assume appellant fully intended to commit the offenses. *See* Art. 67(d), Uniform Code of Military Justice, 10 U.S.C. § 867(d).

Since he intended to defraud the Government, the question remains whether he could be guilty of attempt. Article 80(a), UCMJ, 10 U.S.C. § 880, provides:

> An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

Attempt is a lesser-included offense of the underlying offense. *United States v. Henderson,* 20 M.J. 87 (CMA 1985); *United States v. La Fontant,* 16 M.J. 236 (CMA 1983).

At common law, it was not a defense to attempt if it was factually impossible for the accused to commit the crime. 4 *Wharton's Criminal Law* § 745 at 578, 581–84 (C. Torcia 14th ed. 1981). Thus, "a defendant is guilty of an attempt when, with intent to steal, he reaches into the pocket of another, but the pocket is empty ...." *Id.* at 581 (footnote omitted).

"Legal impossibility," on the other hand, was a different matter:

> It should be recognized that impossibility really has no bearing upon the question of attempt unless it is a case of legal impossibility. Legal impossibility has been distinguished from factual impossibility. The position is that while factual impossibility of success does not prevent the attempt from being made, there can be no attempt in a case involving legal impossibility. What it boils down to is this: *Attempting to do what is not a crime is not attempting to commit a crime.*

R. Perkins and R. Boyce, *Criminal Law* 632 (3d ed. 1982) (emphasis added; footnotes omitted).

The trend, however, has been to eliminate entirely the defense of impossibility, factual and legal. Wharton's, *supra* at 585; *ALI Model Penal Code and Commentaries* § 5.01 and n. 89. As indicated by Perkins, *supra* at 634–35, we joined this trend long ago:

The complexities of the concepts associated with legal and factual impossibility have led some jurisdictions to expressly by statute abandon the concept and focus on the accused's state of mind as he believed the circumstances to be. This is the position taken by the Model Penal Code and has found support in recent court decisions. Under such an approach, in an exhaustively researched opinion, the Court of Military Appeals [*United States v. Thomas*, 13 USCMA 278, 32 CMR 278 (1962)] upheld the conviction of two servicemen for attempted rape where unknown to the defendants the victim at the time of the act was dead rather than merely drunk as the defendants had assumed.

(Footnotes omitted.)

Under this reasoning, the "impossibility" of appellant's committing the underlying offenses is not a defense to attempting to commit them. In appropriate circumstances, we have affirmed findings of guilty of the lesser-included offense of attempt, *United States v. La Fontant, supra,* and I would do so on these facts. At a minimum, I would remand the case to the Court of Military Review for its consideration of the issue.*

Accordingly, I dissent from the result.

---

* In pertinent part, the trial judge outlined his rationale in convicting appellant of the substantive offenses as follows:

An element of the false statement is the accused's knowing statement to be false at the time of the making. So the time of the making is the critical point to be considered. North Carolina declaring a marriage void *ab initio* two years later still does not change the material status at the time of the making of the statement. *Using this rationale there is no requirement for the court to look to an offense under Article 80, an attempt. In other words, the 14 November 1986 decision does not create a change in facts mandating a finding of attempting to make a false statement under an Article 80 offense,* as the court must look at the facts as they existed at the time the statement or statements or documents were generated or executed.

The right to receive the married with dependent BAQ entitlement rate is lost when one is divorced and does not become a vested entitlement again until one is remarried. Thus the right to receive the married rate did not come into existence until 14 November 1986. Prior to that date the Air Force had the greater possessory interest in the monies and the BAQ entitlement. A greater possessory interest than the accused had. And it was only after the 14 November 1986 decision that the right to the monetary payments concerning the BAQ with dependent rate again came into the existence of Sergeant Allen.

(Emphasis added.)

As is evident, the route taken by the trial judge obviated the need to reach the attempt issue. By the same token, however, he made no rulings inconsistent or contradictory with the attempt theory. Indeed, he found appellant guilty of the greater, encompassing offenses in every instance. Nothing in logic or law prevents an appellate court from affirming a lesser-included offense if the lesser offense is unaffected by the flaw found in the greater offense.